## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH,

## JANUARY TERM, 1848.

No. 1.—DAVID C. LEVY, plaintiff in error, *vs.* SOLOMON COHEN, defendant in error.

[1.] Although a note on its face, be negotiable and payable at Charleston, still, if it be indorsed in this State, and there is no evidence to show the understanding of the parties—that the undertaking of the indorser was to be performed in Charleston, the indorsement will be deemed a Georgia, and not a South-Carolina contract.

[2.] When an offer is made by letter, an acceptance by written reply takes effect from the time when the communication containing the acceptance is sent, and not from the time when it is received by the other party.

Assumpsit upon an indorsement of a note. Tried before Judge FLEMING in Chatham Superior Court.

The facts of this cause are fully set out in the opinion of the Court.

WM. & W. F. LAW, for the plaintiff in error.

It is conceded as the general rule, that the law of the place where the contract is made, is to govern, as to the nature, validity, obligation and construction of the contract.

But the plaintiff in error maintains that the contract of indorsement in this case is a Carolina contract, and must be governed by the law of Carolina.

The general rule conceded above, supposes that the contract is

to be executed where it is made. The law of the place can never be the rule when the transaction is entered into with an express view to the law of another country. *Pr. Ld. Mansfield, Burr.* 1077. *Cited in Bayley on bills,* 78.

In the case at bar the note was made and indorsed for a special purpose, viz : for the accommodation of the maker to renew and take up a note discounted at the Bank in Charleston ; it was made *payable and negotiable* there, was to be used there, to be passed away and put into circulation there, by being discounted. All the parties had reference to, and had in view Charleston, where the paper was to become a note, and where it was first to be negotiated, passed away, and put into circulation. Its application to any other purpose by the indorser, or the passing it away by him to any indorsee in Georgia, or other person than the Bank in Charleston to take up the old note, would have been a fraud on the maker : and a holder taking it, not in the usual course of business, or with a knowledge of the purpose for which it was made, could not have recovered from the maker on it.— *See* 1 *Stark. Rep.* 439. 1 *Barn. & Adolp.* 528. 9 *Wend. Rep.* 170. 8 *Wend.* 437. 10 *John. Rep.* 198. 15 *John. Rep.* 270. *See all these cases cited in Bayley on bills,* 525, 526.

The note in the case at bar was intended for discount and negotiation in Charleston. It was in point of fact so negotiated and passed away. There was no contract of indorsement until it was passed away and transferred—and that was done in Charleston.

It is not the writing of the name on the note which constitutes the contract of indorsement ; it is the writing the name and delivery to the indorsee. *Bayley on bills,* 102, 103.

The indorsement of a note passes no interest to the indorsee, as long as the indorser retains it in his possession. *Bayley,* 103. *Clark vs. Boyd,* 2 *Hamm.* 56. *(* 1 *Ohio,* 279.) *Ramsay vs. Livingston,* 18 *Martin,* 15.

Suppose the defendant had written his name on the note in Georgia, and put it in his pocket and gone to Carolina, and had there contracted with a person for the transfer of the note, which he there delivered, could it be pretended that the indorsement was a Georgia contract ?

It is the passing away and delivery of the note, and its receipt and acceptance by the indorsee, which completes and consummates the contract of indorsement. All this was done in Carolina.

Where the drawer of a bill agrees with the payee that the bill shall be negotiated in another country, the drawer is held liable to the payee for the damages which he, the payee, had to pay as indorser. 1 *Stewarts' L. Can. Rep.* 70, *and cited Bayley*, 84.

Why is this liability of the drawer? The place of his contract involved the obligation to pay different damages for its breach, than the place where the payee negotiated and passed away the bill. The answer is, the bill was drawn to be used and negotiated in another country; the contracting parties had that in view, and when negotiated there, the law of that country governed the obligations of the contract. How much stronger is the case at bar, in which an accommodation paper is made and discounted expressly to renew a note running to maturity in a bank in Carolina, and to which purpose it was actually applied. But returning to the enquiry when was this contract of indorsement completed, let us test it by another illustration.

According to the rule, once very generally acted on in this country, that a party to a negotiable paper could not be received to impeach its validity at the time it was made, the question arose in the case of the *Hartford Bank vs. Barry*, whether Eaton the maker of the note could be a witness to prove that the note was an accommodation note, indorsed at his request by the defendant, and discounted for him at usurious interest. The decision of this question turned upon the answer to the enquiry, when was the note made? The Supreme Court of Massachusetts say, we consider the note as made to all substantial purposes, when Eaton procured it to be discounted, which was the purpose for which it was made. It had never before been uttered, &c. 17 *Mass. Rep.* 94,'6,'7.

Now let it be observed, Eaton had signed his name to this note, had delivered it to Barry the indorser, who wrote his name on it; but still it had not been put into circulation, it had not been used, not passed to any one by sale or discount; it was indorsed for the accommodation of the maker; when sold or discounted by him, then for the first time it became a negotiable note.

In the case at bar the defendant had no right to use the note, it was given to him to indorse for the accommodation of the maker, and when it was discounted and put in circulation, then and there, at that time and in that place it received vitality, became a negotiable paper, and was to all purposes as between the parties to it, made and indorsed.

A bill or note is not considered as issued until it is passed away by the drawer or maker. *Bayley on bills*, 97. *Kennerly vs. Nash*, 1 *Stark. Rep.* 452.

But what is an indorsement? It is a contract between two persons; there must be an assignor and assignee, by whom, and to whom, the transfer is made. *See Story on notes, Sec.* 120, 126.

*In Slacum vs. Pomery*, 6 *Cranch*, 221, *and in* 6 *Wheat.* 146, the Supreme Court U. S. say, that an indorsement is not simply the transfer of the paper, but is a new and substantive contract.

What are the obligations of the contract of indorsement. 1. To indemnify holder. 2. That all the antecedent parties had authority to draw, indorse, &c. 3. That the instrument is genuine. *Story on bills, Sec.* 109, 110, 111. These obligations must be entered into with some contracting party—they cannot exist until the bill is delivered, is issued, uttered, put in circulation.

With whom was the contract of indorsement in this case made? Being an accommodation note to renew an old note by the same parties in a Bank, the contract was with the Bank which discounted it; and was made with them in Charleston where it was delivered to, and received by them. There was no indorsee in Georgia with whom any contract was made, in whom any interest in this note became vested by any assignment and delivery in Georgia. The contract had reference to Carolina, the party was there, there it was passed away, received, uttered, and put in circulation.

And the general principle of law is, that a contract is to be deemed made, where it is perfected, *eo loco, quo ultimus in contrahendo assentitur*. *Story's Con. of laws, page* 265, *Sec.* 319, *and authorities there cited.*

Tested by this principle, when was this contract perfected?— We answer when the Trust Company discounted it—it was that act by which they ratified the contract and finally perfected it.— Until that act of discounting the note, the transfer and assignment was incomplete, because there was no acceptance of it.

It was said in the argument that the indorser does not contract to pay where the note is payable, but only to guarantee its payment in that place, and in case of default, to reimburse the holder according to the law of the place where he indorsed. And this is very true. But the question recurs in this case, where is the place of indorsement? When that is established there is no dis-

Levy *vs.* Cohen.

pute as to the law that is to govern—but where is the place?—
*hic labor, hoc opus est,* in this case.

It was urged in the argument of this case upon the trial, that
if this note had been lost or stolen in its transit from Savannah
to Charleston, and had fallen into the hands of a bona fide hold-
er for value, he could have recovered on it. And hence it was
argued that the note was made and indorsed before it left Sa-
vannah. Admit the proposition that the innocent holder for
value of a lost note may recover—how does that prove, that as
between the original parties to an accommodation note for the
use and benefit of the maker, the note is legally made, or be-
comes legally a negotiable paper, until it is negotiated, passed
away, and put in circulation by the maker?

Test the principle by the decisions upon the question, whether
a new stamp be necessary. In *Kennedy vs. Nash,* 1 *Stark.* 452,
before cited, the bill had been altered after it had been sent to
Nash for acceptance, by consent of the drawer; Ld. Ellenbo-
rough held it did not require a new stamp because it was not a
bill until issued or passed away by the drawer. *See Bayley,* 97.

Yet if this bill had been lost in its transit for acceptance, being
payable to the drawer's own order, if indorsed by him, an inno-
cent holder for value, could have recovered from the drawer.

The right of the innocent holder for value to recover, stands
upon its own principles—but these have nothing to do with ques-
tions involving only the relations and rights of the original parties.

Upon the argument of the case in the Court below, much reli-
ance was placed by defendant's counsel on the case of *Snaith and
others vs. Mingay and others,* 1 *Maule & Sel.* 87.

Upon a careful examination of that case, it will not be found
to militate with any of the principles we have maintained. In
that case Bayley & Catterell, partners at Waterford in Ireland,
drew bills with Irish stamps, at Waterford in Ireland, in the
name of the firm, and indorsed by the firm, leaving blanks for the
date, sums, time when payable, and names of the drawees; and
transmitted them in that state to Wallace in London, to be used
by him Wallace, for his individual accommodation. Wallace
filled up the blanks, as he was authorized, and negotiated the
bills. In an action against the indorser, the defence was that they
were English bills and void for want of English stamps. The
decision affirms that they were Irish bills. Now mark the dis-

tinction: the bills were signed and indorsed in Ireland and *actually issued* by the drawers and passed away to Wallace with authority ·to fill them up. The amount of the bills were limited by the Irish stamps. The amount of the decision is, that the signing and indorsing by the drawers was a sufficient drawing, and that the filling up the blanks afterwards by a mere agent, or by an agent who had authority coupled with a discretion, was immaterial, and had relation back to the moment when the bill was drawn. The drawers signed the bill, issued it, gave authority to Wallace to fill it up, and use it for himself. They lost all control over it. Le Blanc, J. says, they come as incipient bills of exchange, and so far having the essence of a bill, as it has the name of the drawer and first indorser upon it. The question he says is not whether it was a perfect bill in Ireland, as whether it is a bill drawn in England. How different the case at bar, the note made in Charleston, sent to the indorser, not to be used by him, with no authority to pass it away, to be returned to the maker, or which is the same thing, his agents for this purpose, the Trust Company; to be by the latter discounted for the maker to take up an accommodation paper of the same parties running to maturity in the said Trust Company. The indorser having no authority to negotiate the note, it was issued when the maker procured it to be discounted in Charleston, and then, and not before, it is considered legally made according to the case in 17 *Mass. Rep.* and other authorities before cited.

It was strongly urged in the argument below that this defence went to the remedy, the *lex fori*, and not the *lex loci*. This idea was rejected by the presiding Judge, and we only notice it to say, that the defence goes to the obligation of the contract. It is not like the statute of limitations—it does not bar the plaintiff's right to sue after a certain time, but if he does not pursue a certain course when required, the defendant shall be discharged from the obligation to fulfil his contract.—*See Story on notes,* Sec. 160–171. In which last section, the very case is put as an illustration of the obligation of the contract.

CHARLTON & McALLISTER, for defendant in error.

Argument of ROBERT M. CHARLTON.

The defence in this case is founded upon the Statute of Geor-

Levy *vs.* Cohen.

gia, which authorises an indorser of a promissory note to require the holder to proceed to collect the same within three months, and if the holder should fail to do so, the endorser shall be discharged from further liability. *Prince*, 462, 471.

We contended, before the Court below, that this statute regulated and affected the remedy, or means of recovery, and therefore was to be regarded as the *lex fori*. *Story's Con. of laws, Sec.* 576, *et seq. Levy vs Boas,* 2 *Bailey's Rep.* 217. *Ruggles vs. Keeler,* 3 *John. Rep.* 262. *Andrews vs. Heriot,* 4 *Cowen's Rep.* 508, *and note* 10 *at page* 528. *The British Linen Co. vs. Drummond,* 10 *Barn. & Cress.* 902. *De la Vega vs. Vianna.* 1 *Barn. & Adol.* 284. *Lincoln vs. Batelle,* 6 *Wend.* 475.

The question has been settled in reference to the Statute of Limitation, and this Statute is a *quasi* Statute of Limitation, giving the holder three months after notice to commence his suit, or lose his remedy against the indorser.

It is true, that this point was decided by the Judge below against us, and he has accordingly so certified; but if he was wrong in this, then however wrong he may have been on the other points, if this point was conclusive for us, this Court will not send the case back. 1 *Kelly,* 580. 2 *Kelly,* 381.

2d. If this be not *lex fori,* then we affirm that it was a *Georgia* contract so far as the indorser was concerned, and that therefore the *lex loci contractus* must govern. *Powers vs. Lynch,* 3 *Mass. Rep.* 80, 1. *Burrows, Hall & Co. vs. Hannegan,* 1 *McLean's Rep.* 5. *Slacum vs. Pomery,* 6 *Cranch's Rep.* 221, 224. *Musson vs. ke,* 4 *Howard's Sup. C. Rep.* 278. *Williams vs. Wade,* 1 *Met.* 83. *Cox vs. Adams,* 2 *Kelly's Rep.* 158. *Story on Prom. s, Sec.* 339, *p.* 404, *and see note* 3, *p.* 405. *Story on Con. of sec.* 314.

fact that this note was payable in *Charleston,* by the maker; ake this case out of the rule thus settled. *That* was the c of the *maker*—that will make the Carolina law applicable —but not to *us*—the contract on the part of the *indorser* is, not that he will pay the note when and where the maker has promised to pay it, but if the maker does not pay it there, at maturity, that he, the indorser, will *thereafter* pay it, *on request*—and that request must of course be made to him where he lived, and where his contract was made, viz in *Georgia.* So far, then, as *our* contract is concerned, we made it in Georgia, to be execu-

SUPREME COURT OF GEORGIA.

ted in Georgia. *Story on Con. of laws, sec.* 315. *Story on Prom. Notes, sec.* 339, *and note* 3 *to page* 404. *Musson vs. Lake,* 4 *Howard,* 278. *Potter vs. Brown,* 5 *East's Rep.* 124. *Hicks vs. Brown,* 12 *John. Rep.* 142.

Of course, if this *lex loci contractus* is to govern, it follows, as a necessary consequence, that any defence or discharge (such as the one we make,) that is sufficient by the law of the State of Georgia, would be good and held valid in every other place and country. *Story on Notes, p.* 187, *sec.* 168.

Every holder of this paper took it *cum onere,* with the right reserved by our contract, to give notice to him to "proceed to collect," and to hold ourselves discharged, if he did not sue within the time prescribed. *Story on Notes, p.* 188. And this should, especially, be the case here, as the Plaintiff in Error took this note after it became due, and after this defence had attached upon it.

But, whilst these principles of law may be admitted, their relevancy will be denied. It will be said, that this was a Carolina, not a Georgia contract—that though the manual act of indorsement was made here, the paper was not to take effect until it reached Charleston—and, therefore, *that* was the place where the contract was finally completed and assented to.

To all this, we answer—that the manual act is certainly the essential act to shew where the contract was entered into, unless there be some strong countervailing testimony—that this act was done by us *here*—that the holder directed his letters to us *here*— knew us to be residing here, and treated the contract as if *made* by us here, as he subsequently demanded from the maker "a town (i. e. Charleston) indorser :" that the very fact that this note was a renewal of a former note that had already been discounted by the Charleston Insurance & Banking Company, so far from being against us, is decidedly with us ; because, before the original note became due, the Charleston Insurance & Banking Company wrote to defendant, asking him either to waive protest of the old note, or indorse the new note sent to him, and that defendant, in Savannah, answered the letter, and acceded to the request, by indorsing and enclosing the note ; *and the moment he mailed this letter enclosing the new note, the contract was complete in Georgia :* the subsequent discount of the new note was a mere *pro forma* act, to carry out the contract already entered into, and for all legal purposes, complete and binding upon the parties. *Story on*

*Contracts, p.* 53, *sec.* 84. *Adams vs. Lindsell,* 1 *Barn. & Ald.* 681.

We affirm, therefore, that *our* contract was completely assented to in Georgia—neither party could recede from the contract, as soon as the defendant had mailed his letter, and the mail bag was locked. If the mail bag had been robbed, would not the defendant have been liable to a bona fide holder? If the defendant had died, would not his estate have been answerable?

But suppose it to be true, that the discount of the note in Charleston was necessary to give it perfect vitality, yet, when that vitality was given, it referred or *related back* to *Georgia,* where the indorsement was made and where the defendant resided, and this indorsement must still be considered a Georgia contract, or indorsement. *Snaith vs. Mingay,* 1 *Maule & Selwyn,* 87.

M. H. McAllister, insisted, further:

That wherever the defence arises *ex post facto,* and depends upon a local law, that there the law of the *Forum* must govern.

*By the Court.*—Lumpkin, J., delivering the opinion.

Dr. H. Lopez, having occasion to raise money in the City of Charleston, South Carolina, offered for discount at the Charleston Insurance and Trust Company, his note, indorsed by the defendant for $300, dated at Charleston and payable at a Bank in that City. It was to be discounted for the accommodation of the maker. The Trust Company refused to discount it, without a City endorser; whereupon the plaintiff indorsed it. It was then discounted. Before its maturity, application was made by Dr. Lopez, for its renewal. This fact was communicated to Cohen, by the Company, through its Secretary. They further informed him, that the time of payment would be extended, provided he would continue his indorsement, either by renewing the old note, or making and establishing a new one in its stead. The letter also mentioned, that Dr. Lopez would correspond with him on the subject. Cohen immediately answered, that he was willing to do either. A short time thereafter, Dr. Lopez forwarded, by letter, to Cohen at Savannah, where he resided, a new note for the amount of the old, including interest, viz: $321 17 cts., payable and negotiable at the Bank of Charleston, who indorsed and mailed it from Savannah to the Company.

David C. Levy subsequently paid the note, and brought suit upon it against Cohen. It seems, that Cohen notified the holders to proceed to collect the note out of the maker before its payment by Levy; and this not having been done, the defendant contended that his contract of indorsement—having been executed in Georgia—was to be regulated and controlled by the laws of this State; and that by the act of 1831, passed for the benefit and protection of securities and indorsers, he was discharged from his liability on the note. The statute provides—"that any security or indorser may, whenever he thinks proper, after the note or instrument becomes due, require the holder to proceed to collect the same, and if he should not do so within three months, the indorser or security shall be no longer liable." *Prince*, 471.

Judge Fleming, before whom the cause was tried, in Chatham county, was asked to charge the jury:

1st. That although the name of the defendant may have been written in Georgia upon the note, yet the contract of indorsement was not completed until the note was passed away and put in circulation, which was not done in this State, but in Carolina.

2d. That there was no completion of the contract of indorsement until there was a delivery of the note to, and receipt and acceptance of it by, the said Company in Charleston, it having been made to discount by said Company, to renew a note already discounted there for the accommodation of the maker.

3d. That being an accommodation paper, payable and negotiable on its face in Charleston, and intended to be discounted for the maker at a Bank in Charleston, the note was never uttered or put in circulation as a note, until it was offered for discount, the purpose for which it was made.

4th. That there was no contracting party or indorsee in Georgia, with whom the contract of indorsement could be, or was made, and consummated, and that the indorser could not have passed it away to an indorsee in Georgia, without a fraud or violation of the purpose for which the note was made.

5th. That the place where the contract is finally completed and assented to, is the place of the contract; *eo loco, quo ultimus in contrahendo assentitur* is the rule, and that place is Charleston in the present case.

But the Circuit Court refused so to instruct the jury; and on the contrary did charge the jury that the contract of indorsement

Levy *vs.* Cohen.

in this case was a Georgia contract, because, although it be true that the contract of indorsement was not completed until the note was passed away, and put in circulation by delivery to the Company in Charleston; and although it be true that there was no contracting party or indorsee in Georgia, and that the indorser would have been guilty of a fraud had he passed away the note to an indorsee in Georgia, yet that under the peculiar facts and circumstances of this case, the indorsement of the defendant must be considered to have been made in Georgia : and that if the jury should find from the evidence, that the defendant gave the notice authorized by the statute of 1831, and that the Company did not proceed within three months thereafter to collect it, their verdict should be for the defendant—and the jury found accordingly.

To the refusal of Judge Fleming to charge as requested, and to the charge as given, the Counsel of the Plaintiff excepted, and upon which error is assigned.

[1.] The general rule that the law of the place where the contract is made is to govern as to its nature, validity, obligation, and construction, is conceded by the learned Counsel for the Plaintiff in error. To this, he contends, and we think very properly, that there are several exceptions; and that among the rest, this is one, viz : that where the contract is entered into with an understanding that it is to be executed in a place different from the one where it is made, as in the case of *Robinson vs. Bland*, 2 *of Burrow*, 1077, where a bill was drawn at Paris, payable in England, Lord Mansfield *held* that it was an English and not a French contract.

It is admitted that the *manual* indorsement of this note was in Georgia. It is urged, however, that being given for a specific purpose, i. e. to renew a paper due at Charleston, and negotiable and payable there, that the contract of indorsement was not completed until the note was accepted and discounted at that place : that *delivery* is necessary to the consummation of this contract, and that no delivery was or could have been made in Georgia, for the reason that there was no one here to receive the note.

Is this position tenable ? Is every note drawn in this State, and transmitted out of it, to Charleston, New York or elsewhere, to be subjected to the foreign jurisdiction for its interpretation?—

We apprehend not. A note might be made and payable at Savannah, and sent to Charleston to be negotiated at one of the Banks there, upon a city indorsement, and yet when done, the fact that the note was discounted in the latter place, would not, as to the maker, convert it into a Carolina contract. Wherein does this case differ from the one under review, except as to the mode of proof? In the one, the place of payment is fixed upon the face of the paper. In the other, the place of execution being ascertained by *aliunde* testimony, the law of that case becomes equally the rule of the contract, no matter where the note may be subsequently negotiated.

Is there any evidence to show that Cohen, at the time he indorsed this note at Savannah, his notorious place of abode, had an express view to the law of South Carolina as to its execution? It is insisted that such is necessarily the inference, in as much as the note is negotiable and payable at Charleston. No doubt this is true as to the *maker*, but not as to Cohen. His agreement was not that he would pay the note at Charleston, at the time specified, but that if Dr. Lopez failed to do so, he, the indorser, would *thereafter* pay it *on request*.

The indorsement of a note in contemplation of law, amounts to a contract on the part of the indorser, and in favor of the indorsee, and every subsequent holder, to whom the note is transferred: (1.) That the instrument and the antecedent signatures are genuine; (2.) That he, the indorser, has a good title to the instrument; (3.) That he is competent to bind himself by the indorsement as indorser; (4.) That the maker is competent to bind himself to the payment, and will upon due presentment of the note pay it at maturity or when it is due; (5.) That if when duly presented it is not paid by the maker, he, the indorser, will, upon reasonable notice given him of the dishonor, pay the same to the indorsee or other holder. *Story on Prom. notes, 135.*

Where, in the case at bar, is this notice of dishonor to be given to, and payment to be made by Cohen? Of course in Georgia, where he lived, and where his contract of indorsement was entered into.

[2.] But is it true that this note was not and could not have been *delivered* in Georgia, in as much as the payees resided in Charleston? Before the original note became due, the Charleston Insurance and Trust Company wrote to defendant, commu-

Levy *vs.* Cohen.

nicating to him the application of Dr. Lopez to procure an extension of the time of payment, and proposing to him, should he acquiesce in the arrangement, either to waive protest of the old note, or indorse the new note, which would be sent to him by his principal. And the defendant at Savannah acceded to the offer by indorsing the new note and inclosing it by *mail* to the proper officer of the Company. *When* and *where* was the note *delivered* in legal contemplation? To consummate a contract there must be mutuality of assent to a certain and definite proposition. But this may be done, not only personally, where the parties are present, but by means of agents or letters, where they are at a distance from each other. And in such cases the rule is, that if the proposition be made in writing, and sent by the Post, the party making the offer can retract by a subsequent letter, reaching the other party at any time before an answer of acceptance is written and put in the mail. *But as soon as such answer is placed in the mail, the contract is completely closed as to both parties.* An acceptance by written communication, takes effect from the time when the letter containing the acceptance is sent, and not from the time when it is received by the other party.— *Story on contracts, (2d ed.)* 384.

I am aware that the Supreme Court of Massachusetts, in *Mc-Culloch vs. the Eagle Insurance Company,* 1 *Pick. Rep.* 278, maintained the doctrine that no acceptance is binding until knowledge of it has reached the other party. The court of King's Bench, however, in *Adams vs. Lindsell,* 1 *Barn. and Ald.* 681, established conclusively the other as the English rule, and the doctrine of the common law. *See also* 6 *Wend. Rep.* 103. 12 *Con. Rep.* 436. 1 *Story's Eq.* 237, *note and cases there cited.*

The contract of indorsement then was completed, or the "union of minds" between Cohen and the Charleston Company ascertained and manifested, so soon as the note *was mailed* at Savannah, upon the maxim—*scribere est agere*—in other words it was consummated in this State. The *proposal* must always precede the *acceptance.* The medium of communication among men, does not allow of their being strictly simultaneous. In the case under discussion, the offer of the Company is to be regarded in law as having been made at the last moment of time preceding the acceptance; and hence the acceptance above signified and offer are in legal contemplation "*at one instant.*"

Even adopting the Massachusetts rule, still when Cohen's letter, inclosing the note, was received at Charleston, and the note substituted for the old, it referred or related back to Georgia, where the indorsement was made, and the defendant resided, and must still be taken and considered as a Georgia contract. And this principle is forcibly illustrated in *Snaith vs. Mingay*, 1 *Maule & Selwyn*, 87, where bills drawn in Ireland and forwarded to London, to be there used, the dates, sums and drawees being left blank, were, when filled up and put in circulation, decided to be *Irish* contracts.

In every aspect then, in which we have been able to examine this question, our conclusion is, that the application for a reversal of the judgment below must be refused.

And this being our determination, it is unnecessary to advert to the other point, made by the counsel for the defendant in error; and that is, that were this indorsement a South Carolina contract, still the act of 1831 affects the *remedy* only, and not the *obligation* of the contract, and was therefore to be regarded as the law of the forum, where suit was brought. Upon that point we forbear to express any opinion.

Judgment affirmed.