SCOTTISH-AMERICAN MORTGAGE COMPANY, LIMITED, v.
W. S. DAVIS ET AL.

No. 1214.  Decided May 11, 1903.

**Contract—Acceptance by Mail.**

While the mailing of a written acceptance of a proposal of sale made by mail constitutes a contract, an acceptance of a proposal otherwise made is under control of the sender, though mailed, until delivery; where by telegram he intercepts the letter, procures its return, and writes declining the terms offered, he has made no binding contract to purchase.  (Pp. 506, 509.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Davis sued the mortgage company and Brown Brothers and recovered against both.  Defendants appealed, and judgment was reversed as to Brown Brothers and affirmed against the company, which thereupon obtained writ of error.

*Gano, Gano & Gano,* for plaintiff in error.—An acceptance, to complete a contract, must be an unconditional and absolute agreement to the very terms of the offer.  Foster v. Land Co., 2 Texas Civ. App., 515; Fitch on Real Estate Agency, 77; McGavock v. Woodlief, 20 How., 221; Waterman v. Boltinghouse, 82 Cal., 659; Fraser v. Wyckoff, 63 N. Y., 445.

To entitle an agent to commissions, he must secure and make known to the vendor a person who is able, willing and ready to purchase; such person whose ability, willingness and readiness are thus made known to the vendor is a purchaser in contemplation of law, and the agent is entitled to his commissions.  The acceptance of the contract of sale must be brought to the knowledge of the vendor before commissions are due the agent.  Foster v. Land Co., 2 Texas Civ. App., 505; De Cordova v. Bahn, 74 Texas, 645; Conkling v. Krakauer, 70 Texas, 739; Kock v. Emerling, 22 How., 73; Kenedy v. Tankersly, 1 White & W. C. C., sec. 843.

The rule that the acceptance of an offer to sell land submitted by mail dates from the mailing of the letter of acceptance is based upon the assumption that the mail is the agent of the vendor.  When such agent enters into collusion with the vendee for the purpose of wronging or defrauding his principal, then said agent ceases to be the agent of such principal and becomes the agent of the wrongdoer.  The postmaster entered into collusion with G. A. Holland and J. R. Couts, when in answer to the telegram from Holland, of date of January 27, 1900, he failed to deliver the letter in his charge addressed to Brown Bros. and returned the same to said Holland.  West M. and Inv. Co. v. Ganzer, 63 Fed. Rep., 647; Ivory v. Kennedy, 57 Fed. Rep., 340; Investment Co. v. Burford, 71 Fed. Rep., 74; Moerlein v. S. M. L. I. Co., 9 Texas Civ. App., 415; Scripture v. S. A. M. Co., Ltd., 20 Texas Civ. App., 153; Kempner v. Comer, 73 Texas, 203.

G. A. Holland, as agent of J. R. Couts, had no authority to mail the letter referred to in the above assignment of error prior to the examination of the abstract of title and plot of the property. The mailing of the letter prior to such examination was contrary to the express instructions given by J. R. Couts. 1 Am. and Eng. Enc. of Law, 2 ed., 993.

The Court of Civil Appeals erred in failing to find as facts that the telegram and letter written by J. R. Couts on January 27, 1900, to Brown Bros., stating that the trade was off, was the only written notice ever received by Brown Bros. from J. R. Couts; that the acceptance referred to in the conversation between I. W. Stephens and W. S. Davis, referred to by W. S. Davis in his letter notifying Brown Bros. that their proposition had been accepted, and referred to in the subsequent correspondence between Brown Bros. and Davis, between Brown Bros. and J. R. Couts, and between W. S. Davis and J. R. Couts, was the alleged acceptance made as a verbal statement in the conversation between J. R. Couts and Judge Stephens; that neither W. S. Davis, the agent, nor Brown Bros. knew or had any information that a letter purporting to be a letter of acceptance had been written or mailed, until after this suit was instituted and after the first deposition of J. R. Couts had been taken.

Assent to form a contract necessarily implies a coming together upon the common ground of a material understanding of the subject matter; there can be no contract where the parties labor under a mistake with reference to the subject matter, if the mistake is of such a character that the minds of the contracting parties are never together. Saltus v. Pruyn, 18 How. Pr., 512; National Bank v. Hall, 101 U. S., 43; Anson on Contracts, 2 Am. ed. star p. 130; 7 Am. and Eng. Enc. of Law, 2 ed., 113.

If a party assents to a proposition, relying upon the representations of the other party to the proposed contract, it will be presumed as between the two (provided the representations are material) that the acceptance is made on condition that the representations are true, and said representations will be given as between the parties a contractual effect. Center v. Weed, 138 N. Y., 532; Duncan v. Hogue, 24 Miss.; 7 Am. and Eng. Enc. of Law, 2 ed., 113.

The evidence shows a specific agreement and understanding between Brown Bros., agents, and W. S. Davis, that no commissions were to be charged or paid until an actual bona fide sale of the property was consummated. A mere agreement to purchase was, in contemplation of the parties, insufficient.

*Matlock, Miller & Dycus,* for defendant in error Davis.—Whenever a broker employed to sell land finds a purchaser who is ready, willing and able to buy on the terms and at the price fixed by the seller, and procures a written agreement by the purchaser so to purchase, then he has earned his commission. Conklin v. Krakauer, 70 Texas, 735; Sullivan v. Hampton, 32 S. W. Rep., 235; Love v. Owens, 31 Mo. App., 501;

Condict v. Cowdry, 5 N. Y. Supp., 187; Geoghegan v. Kelly, 11 N. Y. Supp., 704; Leete v. Norton, 43 Conn., 219; Love v. Miller, 21 Am. Rep., 192; Pearson v. Mason, 120 Mass., 53.

When one party makes a proposition by letter and the other accepts by letter, then the contract is closed the moment the letter of acceptance is deposited in the postoffice for transmission, and thereafter neither of the parties can withdraw therefrom without the consent of the other. Tayloe v. Fire Insurance Co., 9 How. (U. S.), 390; Ferrier v. Storer, 50 Am. Rep., 752; Hunt v. Higman, 30 N. W. Rep., 769; Yonge v. Assurance Co., 30 Fed. Rep., 902; Kempner v. Cohn, 58 Am. Rep., 775; Bryant v. Booze, 55 Ga., 438; Moore v. Pierson, 6 Iowa, 279; Vassar v. Camp, 11 N. Y. (1 Kern), 441.

Where a real estate broker employed to sell land finds a purchaser whose offer is accepted by the vendor, but who afterwards refuses to complete the trade because of the alleged misrepresentations by the vendor, he is entitled to his commissions. Condict v. Cowdrey, 5 N. Y. Supp., 187.

If in this case the contract made by J. R. Couts for the purchase of the land in controversy is found by the court to be voidable because of his misunderstanding concerning the shape of said land, then Brown Bros. are liable to Davis for the commission claimed by him in securing Couts as a purchaser, even though it might be held that the Scottish-American Mortgage Company is not liable to him because of misrepresentations which were made concerning the shape of the land, made by Brown Bros. by means of the map sent to Davis to be delivered to Couts.

*W. P. Finley,* for defendant in error Couts.

BROWN, Associate Justice.—W. S. Davis sued the Scottish-American Mortgage Company, Limited, and Brown Brothers to recover commissions alleged to be due to him from them for procuring a purchaser for certain lands. Brown Brothers were the agents of the mortgage company and represented it in the transaction. The mortgage company and Brown Brothers pleaded over against J. R. Couts, the alleged purchaser, but he was dismissed from the case on a plea of his privilege to be sued in Parker County. The following are the findings of fact by the Court of Civil Appeals:

"The evidence discloses that Brown Bros. resided in Austin, Texas. Davis resided in Fort Worth, Texas, and the communication between them was through the mails. Couts resided in Weatherford and Davis first got in communication with him through Hon. I. W. Stephens, who stated to Davis that Couts would like to purchase the land. After various communications between the parties, Brown Bros. submitted, through Davis, to Couts a proposition to sell. This Couts declined. Davis then went to Weatherford, saw Couts, and secured from him a written proposition to purchase. This was sent by Davis to Brown Bros., and on January 23, 1900, Brown Bros. returned the same to Davis with this interlineation: "Subject to letter from Brown Bros. to W. S.

Davis & Co., dated 20th of January, 1900.' The letter of January 20, 1900, mentioned related to a tax title on twelve sections of said land and stated, 'You will recollect that there is an old absolutely invalid tax title on twelve sections. We could clear off this title by suit easily, but prefer that the purchaser do it and would pay half of the costs of the suit.' The proposition so interlined by Brown Bros. was sent to Couts by Davis. After receiving same Couts, on the morning of January 26, 1900, met Judge Stephens in Weatherford on his way to take the train for Fort Worth, and told him (Stephens) that he could tell Davis that he (Couts) had decided to take the land. Stephens said for him to confer direct with Brown Bros., which he assented to. When Judge Stephens reached Fort Worth he told Davis of the conversation he had with Couts. Davis on the same day wired Brown Bros. that Couts had accepted and followed same with a letter. On that same day Couts mailed to Brown Bros. the following letter, to wit:

" 'January 26, 1900.
" 'Messrs. Brown Bros., Austin, Texas:
" 'Gentlemen.—You are hereby notified that I accept the interlineation above the last line of first page of preliminary contract and will take the land as indicated by said agreement.

" 'I think, however, that you people ought to pay the whole cost of clearing title, but will not let that prevent the trade. You will please advise me what you think is best plan of procedure in clearing title. Shall we sue for same or act on the defense and wait for adverse claimant to institute proceedings?

" 'The abstract received, which is too large for immediate examination. I accept relying on your statement and that it will show up as represented. Yours truly,

" 'J. R. COUTS.'

"This letter never reached Brown Bros., it being intercepted the next day by a telegram sent by one Holland at the instance of Couts to the postmaster at Austin, who returned it to Couts, and on that day, 27th, Couts telegraphed Brown Bros. that he objected to the land on account of its shape and declared the trade off. In the letter from Brown Bros. to Davis of January 22d, in which Couts' proposal was returned interlined by Brown Bros., they said: 'Your commission, of course, will be payable only in the event of the sale going through according to the contract.' This is the first time Brown Bros. said anything to Davis as to when the commissons were payable."

A judgment was entered in favor of Davis against the mortgage company and Brown Bros. for $3382, which was affirmed against the mortgage company and reversed and rendered in favor of Brown Bros. by the Court of Civil Appeals.

The controlling question in this case is, was there at any time a contract between the mortgage company and Couts which could have been

enforced by either party? The first proposition in writing that passed between the parties was sent by Brown Bros., as agents of the mortgage company, to Davis to be submitted to Couts, who rejected it and returned the proposition in a modified form to Brown Bros. for their acceptance.— Brown Bros. did not accept the proposition as modified by Couts, but in turn added other terms, and returned it to Davis to be again submitted to Couts, who took the matter under advisement, which left the proposition open for rejection by either party. Up to this time their minds had not met in agreement. Couts, after consideration of the proposed contract, told his friend, Judge Stephens, that he would accept it, and authorized Stephens to state that fact to Davis in Fort Worth, but upon the suggestion of Stephens, Couts concluded to communicate through the mail with Brown Bros. and to close the trade with them. Judge Stephens stated the conversation between himself and Couts to Davis at Fort Worth, telling him that Couts would communicate directly with Brown Bros. and "close the contract with them." These facts did not constitute a binding obligation on Couts; he might withhold his intended acceptance. When Couts put his acceptance of the proposition in the postoffice to be delivered to Brown Bros. at Austin it was still subject to his control, and might be recalled at any time before actual delivery, unless the facts bring it within the rule of law hereafter stated.

The authorities are well-nigh unanimous in asesrting that, when a party submits to another through the mail a proposition of purchase or sale, the receiver of the propositon has the right within a reasonable time and before it is withdrawn to accept by a writing deposited in the postoffice duly stamped, ready for carriage and delivery, and such an acceptance binds the proposer of the contract from the time the deposit is made in the postoffice, whether it be delivered or not. Blake v. Insurance Co., 67 Texas, 163; Bryant v. Booze, 55 Ga., 445; Levy v. Cohen, 4 Ga., 13; Moore v. Pierson, 6 Iowa, 292; Vassar v. Camp, 11 N. Y., 441; Hunt v. Higman, 30 N. W. Rep., 769; Hallock v. Insurance Co., 2 Dutch., 280; Dunlop v. Higgins, 1 H. L. C., 397. Any number of authorities to the same effect might be added.

The facts of this case do not bring it within the rule above laid down, because there had been no proposition submitted by Brown Bros. on behalf of the mortgage company to Couts through the mail, hence there was no implied authority for Couts to accept by mail except by actual delivery of his acceptance. When Couts deposited his letter in the postoffice it was subject to his control until delivered to the party addressed, and he had a perfect right to withdraw his acceptance and abandon the contract, because it did not bind the mortgage company until delivered and could not bind Couts alone,—it must be mutual. There never was a time when Couts was legally bound to take the land. Davis never did present Couts "able, ready and willing" to accept a deed for the land from the mortgage company, nor did the mortgage company ever decline to carry out the proposed contract; on the contrary, after Brown Bros. received the telegram withdrawing the proposition they made an earnest

and persistent effort to induce Couts to carry out the trade but he refused. Neither Brown Bros., Davis, nor the mortgage company ever knew that Couts had mailed a written acceptance until after he had repeatedly rejected all propositions from Brown Bros. to carry it out and suit had been commenced by Davis to recover his commissions.

There is no evidence to support the judgment in favor of Davis against the mortgage company, and, from the undisputed facts, it is evident that no right of action can be established upon another trial in favor of Davis. It is therefore ordered that the judgment of the Court of Civil Appeals as between Davis and the mortgage company be reversed, and that judgment be here entered in favor of the mortgage company that Davis take nothing by his suit and for all costs. The judgment of the Court of Civil Appeals as to all the other parties is affirmed.

*Reversed and rendered.*