cantudr2 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-663-CV





MARIA DIOSEL CANTU,



 APPELLANT


vs.





CENTRAL EDUCATION AGENCY, LIONEL R. MENO, IN HIS OFFICIAL CAPACITY


ONLY, AND SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 92-00435, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 





 Appellant Maria Diosel Cantu sued for judicial review of a final order of the State
Commissioner of Education, Lionel Meno. The district court affirmed the Commissioner's
decision. We will affirm the trial-court judgment.



BACKGROUND


 The facts in this cause are undisputed. Cantu was hired as a special-education
teacher by the San Benito Consolidated Independent School District under a one-year contract for
the 1990-91 school year. On Saturday, August 18, 1990, shortly before the start of the school
year, Cantu hand-delivered to her supervisor a letter of resignation, effective August 17, 1990. 
In this letter, Cantu requested that her final paycheck be forwarded to an address in McAllen,
Texas, some fifty miles from the San Benito office where she tendered the resignation. The San
Benito superintendent of schools, the only official authorized to accept resignations on behalf of
the school district, received Cantu's resignation on Monday, August 20. The superintendent
wrote a letter accepting Cantu's resignation the same day and deposited the letter, properly
stamped and addressed, in the mail at approximately 5:15 p.m. that afternoon. At about 8:00 a.m.
the next morning, August 21, Cantu hand-delivered to the superintendent's office a letter
withdrawing her resignation. This letter contained a San Benito return address. In response, the
superintendent hand-delivered that same day a copy of his letter mailed the previous day to inform
Cantu that her resignation had been accepted and could not be withdrawn.

 The State Commissioner of Education concluded that, because the school district's
acceptance of Cantu's resignation was effective when mailed, an agreement to rescind Cantu's
employment contract was in force when she attempted to withdraw her offer of resignation and
the school district's refusal to honor her contract was not unlawful. 



DISCUSSION


 The sole legal question presented for our review is the proper scope of the "mailbox
rule" (1) under Texas law and whether the rule was correctly applied by the Commissioner and
district court. (2) None of the parties to this appeal disputes that an agreement to rescind Cantu's
employment contract requires the elements of an offer, acceptance, and consideration. See Texas
Gas Util. Co. v. Barrett, 460 S.W.2d 409, 414 (Tex. 1970). Rather, Cantu contends in a single
point of error that the trial court erred in ruling that the agreement to rescind her contract of
employment became effective when the superintendent deposited his letter accepting Cantu's
resignation in the mail. Cantu argues that, under Texas law, an acceptance binds the parties in
contract on mailing only if the offeror has sent the offer by mail or has expressly authorized
acceptance by mail. There was no express authorization for the school district to accept Cantu's
offer by mail. The question presented is whether authorization to accept by mail may be implied
only when the offer is delivered by mail or also when the existing circumstances make it
reasonable for the offeree to so accept. 

 The aphorism "the offeror is the master of his offer" reflects the power of the
offeror to impose conditions on acceptance of an offer, specify the manner of acceptance, or
withdraw the offer before the offeree has effectively exercised the power of acceptance. 
However, more often than not, an offeror does not expressly authorize a particular mode,
medium, or manner of acceptance. Consequently, particularly with parties communicating at a
distance, a rule of law is needed to establish the point of contract formation and allocate the risk
of loss and inconvenience that inevitably falls to one of the parties between the time that the
offeree exercises, and the offeror receives, the acceptance. See 1 Arthur L. Corbin, Contracts
§ 78 (1963). 

 As Professor Corbin notes, courts could adopt a rule that no acceptance is effective
until received, absent express authorization by the offeror; however, the mailbox rule, which
makes acceptance effective on dispatch, closes the deal and enables performance more promptly,
and places the risk of inconvenience on the party who originally has power to control the manner
of acceptance. Id. Moreover, "the mailing of a letter has long been a customary and expected
way of accepting [an] offer." Id. Therefore, "[e]ven though the offer was not made by mail and
there was no [express] authorization, the existing circumstances may be such as to make it
reasonable for the offeree to accept by mail and to give the offeror reason to know that the
acceptance will be so made." Id. In short, acceptance by mail is impliedly authorized if
reasonable under the circumstances.

 The Restatement approves and adopts this approach: an acceptance by any medium
reasonable under the circumstances is effective on dispatch, absent a contrary indication in the
offer. Restatement (Second) of Contracts §§ 30(2), 63(a), 65, 66 (1979). In addition, the
Restatement specifically recognizes that acceptance by mail is ordinarily reasonable if the parties
are negotiating at a distance or even if a written offer is delivered in person to an offeree in the
same city. Id. § 65 cmt. c (emphasis added). The same standard, viz., whether the manner of
acceptance is reasonable under the circumstances, governs offer and acceptance in commercial
transactions under the Texas Business and Commerce Code. See Tex. Bus. & Com. Code Ann.
§ 2.206 (West 1968).

 Cantu relies primarily on a 1903 opinion of the Texas Supreme Court to support
her contention that an offeree is impliedly authorized to accept by mail only if the offer is
submitted through the mail. Scottish-American Mortgage Co. v. Davis, 74 S.W. 17 (Tex. 1903). 
Scottish-American involved unusual facts, however, making it an inappropriate guide to a general
rule of law. In Scottish-American, a real-estate agent sued a landowner to recover commissions
allegedly due him for procuring a purchaser. Id. The prospective purchaser had notified the
agent orally that he would accept the owner's offer and had sent a letter of acceptance to the
owner. However, the purchaser intercepted the letter of acceptance by telegraph before its
delivery. The owner, agent, and purchaser then continued to bargain until the purchaser withdrew
from negotiations. No one knew of the purchaser's acceptance letter until the agent brought suit
to recover his commission. Id. at 18-19.

 The court held that the purchaser had no implied authority to accept by mail
because the offer was not submitted by mail; therefore, no contract was formed. (3) Id. at 19. 
However, in contrast to the instant cause, enforcement of the underlying contract was not at issue
because the purchaser had been dismissed from the suit. See id. at 17-18. Contract formation
was urged only by the agent seeking to recover his commission. The court was understandably
reluctant to rule that a contract was formed for the sole benefit of the agent when neither of the
parties to the contract was seeking its enforcement.

 A more recent opinion of the supreme court, McKinney v. Croan, 188 S.W.2d 144
(Tex. 1945), suggests that circumstances indicating the reasonableness of an acceptance be
considered in determining whether an acceptance by mail is impliedly authorized and effective on
mailing. In holding that a reply to a request for admissions was effective when mailed, (4) the
McKinney court specifically noted that the "parties resided about 350 miles apart," in addition to
noting that the request was sent by mail. Id. at 145. The court also cited to 17 C.J.S. Contracts
§ 52, which reads in part:



The request or authorization to communicate the acceptance by mail is implied in
two cases, namely: (1) Where the post is used to make the offer . . . . (2) Where
the circumstances are such that it must have been within the contemplation of the
parties that according to the ordinary usages of mankind the post might be used as
a means of communicating the acceptance.



(Emphasis added).

 The McKinney court's express mention of the distance between the parties as a
circumstance making acceptance by mail reasonable and its affirmation of an authority following
the modern trend that either mail delivery of the offer or reasonable circumstances might
impliedly authorize communication by mail convince us that Texas law is not frozen into the rigid
1903 position urged by appellant. As we noted earlier, Texas courts are directed by statute to
consider whether acceptance by mail is reasonable under the circumstances in commercial
transactions. Tex. Bus. & Com. Code Ann. § 2.206 (West 1968). We hold that it is proper to
consider whether acceptance by mail is reasonably implied under the circumstances, whether or
not the offer was delivered by mail.

 Looking at the circumstances presented for our review, we agree with the
Commissioner and the trial court that it was reasonable for the superintendent to accept Cantu's
offer of resignation by mail. Cantu tendered her resignation shortly before the start of the school
year -- at a time when both parties could not fail to appreciate the need for immediate action by
the district to locate a replacement. In fact, she delivered the letter on a Saturday, when the
Superintendent could neither receive nor respond to her offer, further delaying matters by two
days. Finally, Cantu's request that her final paycheck be forwarded to an address some fifty miles
away indicated that she could no longer be reached in San Benito and that she did not intend to
return to the school premises or school-district offices. The Commissioner of Education and
district court properly concluded that it was reasonable for the school district to accept Cantu's
offer by mail. We overrule appellant's point of error.



CONCLUSION


 We affirm the trial-court judgment that the Commission correctly determined that
the school district accepted Cantu's resignation, rescinding her employment contract, before Cantu
attempted to withdraw her offer of resignation.



 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: September 28, 1994

Publish
1. [1]  The mailbox rule provides that the properly addressed acceptance of an offer is effective
when deposited in the mail, unless otherwise agreed or provided by law. Black's Law
Dictionary 952 (6th ed. 1990).
2.   An administrative determination of a question of law is not entitled to a presumption of
validity. Teacher Retirement Sys. of Tex. v. Cottrell, 583 S.W.2d 928, 930 (Tex. App.--Austin
1979, writ ref'd n.r.e.). If substantial rights of the appellant have been prejudiced by an
agency's error of law, we will reverse or remand the cause to the agency for further
proceedings. Tex. Gov't Code Ann. § 2001.174(2)(D) (West 1994).
3.   In fact, the court applied the mailbox rule very rigidly: the opinion suggests that the
owner sent the offer by mail to the agent, who then forwarded the offer by mail to the
purchaser. Scottish-American, 74 S.W. at 18. The court appears to disregard this use of the
mail and focuses on the fact that the owner did not submit the offer directly to the purchaser
through the mail.
4.   Although McKinney was not a contract case, the court applied contract principles of
offer and acceptance. McKinney, 188 S.W.2d at 145.