Maria Diosel CANTU, Appellant,

v.

CENTRAL EDUCATION AGENCY, Lionel R. Meno, in His Official Capacity Only, and San Benito Consolidated Independent School District, Appellees.

No. 3–93–663–CV.

Court of Appeals of Texas, Austin.

Sept. 28, 1994.

Rehearing Overruled Oct. 19, 1994.

Kevin Lungwitz, Staff Counsel, Texas State Teachers Ass'n, Austin, for appellant.

Dan Morales, Atty. Gen., Frank J. Knapp, Jr., Asst. Atty. Gen., Austin, for Central Educ. Agency and Lionel R. Meno, in His Official Capacity Only.

Judy Underwood, Eric W. Schulze, Walsh, Anderson, Underwood, Schulze & Aldridge, P.C., Austin, for San Benito Consol. Independent School Dist.

Before POWERS, ABOUSSIE and SMITH, JJ.

BEA ANN SMITH, Justice.

Appellant Maria Diosel Cantu sued for judicial review of a final order of the State Commissioner of Education, Lionel Meno. The district court affirmed the Commissioner's decision. We will affirm the trial-court judgment.

## BACKGROUND

The facts in this cause are undisputed. Cantu was hired as a special-education teacher by the San Benito Consolidated Independent School District under a one-year contract for the 1990–91 school year. On Saturday, August 18, 1990, shortly before the start of the school year, Cantu hand-delivered to her supervisor a letter of resignation, effective August 17, 1990. In this letter, Cantu requested that her final paycheck be forwarded to an address in McAllen, Texas, some fifty miles from the San Benito office where she tendered the resignation. The San Benito superintendent of schools, the only official authorized to accept resignations on behalf of the school district, received Cantu's resignation on Monday, August 20. The superintendent wrote a letter accepting Cantu's resignation the same day and deposited the letter, properly stamped and addressed, in the mail at approximately 5:15 p.m. that afternoon. At about 8:00 a.m. the next morning, August 21, Cantu hand-delivered to the superintendent's office a letter withdrawing her resignation. This letter contained a San Benito return address. In response, the superintendent hand-delivered that same day a copy of his letter mailed the previous day to inform Cantu that her resignation had been accepted and could not be withdrawn.

The State Commissioner of Education concluded that, because the school district's acceptance of Cantu's resignation was effective when mailed, an agreement to rescind Cantu's employment contract was in force when she attempted to withdraw her offer of resig-

nation and the school district's refusal to honor her contract was not unlawful.

## DISCUSSION

 The sole legal question presented for our review is the proper scope of the "mailbox rule" [1] under Texas law and whether the rule was correctly applied by the Commissioner and district court.[2] None of the parties to this appeal disputes that an agreement to rescind Cantu's employment contract requires the elements of an offer, acceptance, and consideration. *See Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 414 (Tex.1970). Rather, Cantu contends in a single point of error that the trial court erred in ruling that the agreement to rescind her contract of employment became effective when the superintendent deposited his letter accepting Cantu's resignation in the mail. Cantu argues that, under Texas law, an acceptance binds the parties in contract on mailing only if the offeror has sent the offer by mail or has expressly authorized acceptance by mail. There was no express authorization for the school district to accept Cantu's offer by mail. The question presented is whether authorization to accept by mail may be implied only when the offer is delivered by mail or also when the existing circumstances make it reasonable for the offeree to so accept.

The aphorism "the offeror is the master of his offer" reflects the power of the offeror to impose conditions on acceptance of an offer, specify the manner of acceptance, or withdraw the offer before the offeree has effectively exercised the power of acceptance. However, more often than not, an offeror does not expressly authorize a particular mode, medium, or manner of acceptance. Consequently, particularly with parties communicating at a distance, a rule of law is needed to establish the point of contract formation and allocate the risk of loss and

---

1. The mailbox rule provides that the properly addressed acceptance of an offer is effective when deposited in the mail, unless otherwise agreed or provided by law. Black's Law Dictionary 952 (6th ed. 1990).

2. An administrative determination of a question of law is not entitled to a presumption of validity.

*Teacher Retirement Sys. of Tex. v. Cottrell*, 583 S.W.2d 928, 930 (Tex.App.—Austin 1979, writ ref'd n.r.e.). If substantial rights of the appellant have been prejudiced by an agency's error of law, we will reverse or remand the cause to the agency for further proceedings. Tex.Gov't Code Ann. § 2001.174(2)(D) (West 1994).

inconvenience that inevitably falls to one of the parties between the time that the offeree exercises, and the offeror receives, the acceptance. *See* 1 Arthur L. Corbin, *Contracts* § 78 (1963).

■ As Professor Corbin notes, courts could adopt a rule that no acceptance is effective until received, absent express authorization by the offeror; however, the mailbox rule, which makes acceptance effective on dispatch, closes the deal and enables performance more promptly, and places the risk of inconvenience on the party who originally has power to control the manner of acceptance. *Id.* Moreover, "the mailing of a letter has long been a customary and expected way of accepting [an] offer." *Id.* Therefore, "[e]ven though the offer was not made by mail and there was no [express] authorization, the existing circumstances may be such as to make it reasonable for the offeree to accept by mail and to give the offeror reason to know that the acceptance will be so made." *Id.* In short, acceptance by mail is impliedly authorized if reasonable under the circumstances.

■ The Restatement approves and adopts this approach: an acceptance by any medium reasonable under the circumstances is effective on dispatch, absent a contrary indication in the offer. Restatement (Second) of Contracts §§ 30(2), 63(a), 65, 66 (1979). In addition, the Restatement specifically recognizes that acceptance by mail is ordinarily reasonable if the parties are negotiating at a distance or *even if a written offer is delivered in person to an offeree in the same city. Id.* § 65 cmt. c (emphasis added). The same standard, *viz.*, whether the manner of acceptance is reasonable under the circumstances, governs offer and acceptance in commercial transactions under the Texas Business and Commerce Code. *See* Tex.Bus. & Com.Code Ann. § 2.206 (West 1968).

Cantu relies primarily on a 1903 opinion of the Texas Supreme Court to support her contention that an offeree is impliedly authorized to accept by mail only if the offer is submitted through the mail. *Scottish–American Mortgage Co. v. Davis,* 96 Tex. 504, 74 S.W. 17 (1903). *Scottish–American* involved unusual facts, however, making it an inappropriate guide to a general rule of law. In *Scottish–American,* a real-estate agent sued a landowner to recover commissions allegedly due him for procuring a purchaser. *Id.* The prospective purchaser had notified the agent orally that he would accept the owner's offer and had sent a letter of acceptance to the owner. However, the purchaser intercepted the letter of acceptance by telegraph before its delivery. The owner, agent, and purchaser then continued to bargain until the purchaser withdrew from negotiations. No one knew of the purchaser's acceptance letter until the agent brought suit to recover his commission. *Id.* 74 S.W. at 18–19.

The court held that the purchaser had no implied authority to accept by mail because the offer was not submitted by mail; therefore, no contract was formed.[3] *Id.* 74 S.W. at 19. However, in contrast to the instant cause, enforcement of the underlying contract was not at issue because the purchaser had been dismissed from the suit. *See id.* 74 S.W. at 17–18. Contract formation was urged only by the *agent* seeking to recover his commission. The court was understandably reluctant to rule that a contract was formed for the sole benefit of the agent when neither of the parties to the contract was seeking its enforcement.

A more recent opinion of the supreme court, *McKinney v. Croan,* 144 Tex. 9, 188 S.W.2d 144 (1945), suggests that circumstances indicating the reasonableness of an acceptance be considered in determining whether an acceptance by mail is impliedly authorized and effective on mailing. In holding that a reply to a request for admissions was effective when mailed,[4] the *McKinney* court specifically noted that the "parties re-

---

**3.** In fact, the court applied the mailbox rule very rigidly: the opinion suggests that the owner sent the offer by mail to the agent, who then forwarded the offer by mail to the purchaser. *Scottish–American,* 74 S.W. at 18. The court appears to disregard this use of the mail and focuses on the fact that the owner did not submit the offer directly to the purchaser through the mail.

**4.** Although *McKinney* was not a contract case, the court applied contract principles of offer and acceptance. *McKinney,* 188 S.W.2d at 145.

sided about 350 miles apart," in addition to noting that the request was sent by mail. *Id.* 188 S.W.2d at 145. The court also cited to 17 C.J.S. *Contracts* § 52, which reads in part:

> The request or authorization to communicate the acceptance by mail is implied in two cases, namely: (1) Where the post is used to make the offer.... (2) *Where the circumstances are such that it must have been within the contemplation of the parties that according to the ordinary usages of mankind the post might be used as a means of communicating the acceptance.*

(Emphasis added).

■ The *McKinney* court's express mention of the distance between the parties as a circumstance making acceptance by mail reasonable and its affirmation of an authority following the modern trend that *either* mail delivery of the offer *or* reasonable circumstances might impliedly authorize communication by mail convince us that Texas law is not frozen into the rigid 1903 position urged by appellant. As we noted earlier, Texas courts are directed by statute to consider whether acceptance by mail is reasonable under the circumstances in commercial transactions. Tex.Bus. & Com.Code Ann. § 2.206 (West 1968). We hold that it is proper to consider whether acceptance by mail is reasonably implied under the circumstances, whether or not the offer was delivered by mail.

■ Looking at the circumstances presented for our review, we agree with the Commissioner and the trial court that it was reasonable for the superintendent to accept Cantu's offer of resignation by mail. Cantu tendered her resignation shortly before the start of the school year—at a time when both parties could not fail to appreciate the need for immediate action by the district to locate a replacement. In fact, she delivered the letter on a Saturday, when the Superintendent could neither receive nor respond to her offer, further delaying matters by two days. Finally, Cantu's request that her final paycheck be forwarded to an address some fifty miles away indicated that she could no longer be reached in San Benito and that she did not intend to return to the school premises or school-district offices. The Commissioner of Education and district court properly concluded that it was reasonable for the school district to accept Cantu's offer by mail. We overrule appellant's point of error.

## CONCLUSION

We affirm the trial-court judgment that the Commission correctly determined that the school district accepted Cantu's resignation, rescinding her employment contract, before Cantu attempted to withdraw her offer of resignation.