No. 1981.

J. H. BLAKE & CO. *v.* HAMBURG BREMEN FIRE INSURANCE COMPANY.

1. CONTRACT.—A contract may be consummated by letter deposited in the post office; and when an offer is made contemplating an acceptance in this manner, and a letter accepting is properly mailed, the agreement is complete; but to be properly mailed the letter should be duly posted, and the date of the posting must determine the date of the contract.

2. CASES APPROVED.—Adams v. Lindell, 1 B. & Ald., 881; Dunlop v. Higgins, 1 H. L. C., 381, and Taylor v. Insurance Company, 9 How., 390, approved.

3. CHARGE OF COURT.—An abstract proposition stated as law in the charge of the court, which is not correct, can afford no ground for new trial, when it could not result in prejudice to the party complaining of it.

4. ASSIGNMENT OF ERROR —The oft repeated caution, again given, that an assignment of error which specifies no particular charge given by the court and no special error in either of them, but complaining in general terms of the refusal of the court to give the charges asked, is violative of a rule of court and of repeated decisions.

5. INSURANCE. — If an insurance risk is by contract between the parties to be affected, to begin from the deposit of a letter in the post office, such an arrangement must be construed to mean the proper deposit of such a letter and in a manner to assure its delivery, and the risk begins only after the letter is stamped, as the evidence that it is post paid.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

*Crank & Taliaferro,* for appellant, cited 2 Kent, twelfth edition, 260; Flanders on Insurance, 117 et seq. to 136; Wood on Insurance, sections 18 to 30, page 34; Martin v. Futh, 6 Wendell, 57; 2 Parsons on Contracts, pages 423 and 420, and note, sixth edition; Sanborn v. Insurance Company, 16 Gray, pages 452, 453, 454; Audubon v. Insurance Company, 27 New York, pages 222, 223, etc.; Hallock v. Connecticut Insurance Company, 26 New Jersey, 274 to 284; Palm, Aministrator, v. Fire Insurance Company, 20 Ohio Reports, 536, 537 and 538; Woodruff v. Columbus Fire Insurance Company, 5 Louisiana Annual, 699; Taylor v. Insurance Company, 9 Howe, 390; Insurance Company v. Colt, 20 Wallace, 560 and 561; Loring v. Proctor, 26 Maine, 29; Blanchard v. Waite, 28 Maine, 57; Wood on Insurance, pages 78, 624, 625, 626, 637; Sanborn v. Insurance Company, 16 Gray, 454, 455; Perkins v. Insurance Company, 4 Cowen, 661; Rowley v. Insurance Company, 36 New York, 550; Columbia Insurance Company v. Cooper, 50 Pennsylvania State, 331; Insurance Company v. Colt, 20 Wallace, 570; 17 Iowa, 282.

*Hutcheson & Carrington,* for appellee, cited Revised Statutes of the United States, sections 3937, 3896, 3904, 3865; May on Insurance, section 53, page 55; 1 Wait's Actions and Defenses, page 86, section 5; fifth edition, first volume, Parsons on Contracts, 484; second volume, 461 and notes; Maclay v. Harvey, 90 Illinois, 525; same case, 32 American Reports, 35, and notes on pages 50, 51; Addison on Contracts, volume 1, section 32 and notes, and Mactier's Administrator v. Frith, 6 Wendell, 103.

GAINES, ASSOCIATE JUSTICE.    At the time the transactions occurred which gave rise to this litigation, Cotton & Brother

were agents representing appellee, and also a large number of other companies doing a business of fire insurance. O. L. Cochran at that time was also an agent of still other insurance companies. Being limited by his principals as to the amount of his risks, he was not able to meet in full the demands of his customers. A written agreement was accordingly entered into between Cotton & Brother, as agents of certain companies represented by them, on the one hand, and Cochran, as agent on the other, stipulating that the former would "cover surplus lines" of insurance for the latter on cotton in certain presses in the city of Houston.

The Insurance Company of North America, the "Traders'" and appellee were each to carry insurance upon cotton in the International Press to the amount of five thousand dollars. It is evident from the written contract and the testimony on the trial, that by the agreement between these parties it was contemplated that when Cochran had a demand for more insurance than he could carry, he should designate by a memorandum in his office the companies named to which it should be apportioned and the amount allotted to each; and that when this was done insurance to the amount so stated was to be considered effected in the respective companies for twenty-four hours, but no longer unless reported by Cochran to Cotton & Brother. There was also an agreement by Cochran with appellees to insure their cotton in the International Press, and it was understood between them that whenever after night appellants should mail a letter to Cochran notifying him of the amount of insurance desired, they were to be deemed insured for that amount, from the time the letter was so posted.

On the night of December 2, 1882, Cochran having received no application from appellants and anticipating that such might be made by letter as agreed upon, provided for it by designating by a memorandum in his office insurance for them to the amount of five thousand dollars each in the Insurance Company of North America, and in the Hamburg Bremen Company—the appellee in this appeal.

About nine o'clock on that night appellee deposited in the postoffice a letter addressed to Cochran notifying him to increase the insurance on their cotton in the International Press to the amount of ten thousand dollars. This letter was not delivered until December 4.

It is claimed by appellee that it was not stamped when posted,

and there was strong evidence adduced on the trial to support this conclusion.

Admitting, for the sake of argument, that no stamp had been placed upon the letter, the question arises was this such a compliance with the terms of the agreement between Cochran and appellants as to complete either a contract *of* insurance or a contract for insurance in this particular instance. A contract may be consummated by letters deposited in the postoffice; and when an offer is made contemplating an acceptance in this manner, and a letter accepting it is properly mailed, the agreement is complete. (Adams v. Lindell, 1 B. & Ald., 681; Dunlop v. Higgins, 1 H. L. C., 381; Taylor v. Insurance Co., 9 Howard, 390.) We know of no decision exactly in point upon the question of posting an unstamped letter; it is held, however, in Maclay v. Harvey, 90 Illinois, 525, that an offer to be accepted by return mail is not assented to by delivering a letter to a messenger to be mailed, who fails to do this in the proper time. The cases are numerous, both in the English and American courts, which hold that if the offer contemplates an acceptance through the postoffice, the contract is complete as soon as the letter is mailed accepting it. But in all these cases the letters were duly posted. That this is what is intended by such an offer, we think quite obvious, at least in the United States.

Our postal laws require a prepayment of postage before a letter can either be transmitted or delivered. (Rev. Stat. U. S. arts. 3896, 3900, 3904.) Without this, a communication addressed to another postoffice will not be forwarded, and a dropped letter will not be delivered. How is it, then, in the case before us? If the letter was not prepaid, was the posting a compliance with the condition upon which the insurance was to depend according to the original agreement between Cochran and appellants? That it was not the act contemplated by them in making that agreement we think evident from the circumstances of the cases and the ends to be accomplished by the letter.

As a prudent business man, Cochran must have had two objects in view in agreeing to this method of effecting the insurance. One was to secure a delivery to himself of written evidence of appellants application for insurance; the other to get prompt notice of the transaction, so that he might protect himself from liability by reporting the insurance to Cotton & Brother, and thereby keeping it in force.

We are cited by appellant's counsel to the Postoffice Regula-

tions, section 439, we presume for the purpose of showing that a person to whom an unstamped "dropped" letter is addressed may secure its delivery. Waiving the question whether we can take judicial notice or not of the regulations of the departments of the general government, we think it a sufficient answer to this to say that even under these rules great delay in the delivery of a letter is the probable result of the omission to prepay the postage. In this case we are not left to speculate upon this matter. The testimony shows that there was a delay of twenty-four hours at least before the letter was delivered, and that this was caused by the fact that no stamp had been placed upon it.

Now, let us suppose that the fire had occurred before the delivery of the letter and after a lapse of twenty-four hours from the time Cochran made the memorandum in his office, and that in the meantime he had received no notice that the letter had been mailed or of its contents. In such a case could appellee be held responsible, when, by the terms of the contract made by its agents, the insurance was to expire if not reported in twenty-four hours? On the other hand, could Cochran be held liable for not reporting the insurance, when, by reason of appellant's neglect, he had failed to get notice of their application? We do not ask these questions for the purpose of answering them. That is unnecessary to the decision of this case. We propound them merely to show that it was a matter of the greatest importance to Cochran that the letter of appellants notifying him of their desire or application should have been properly mailed and *its* delivery without delay and without additional expense to him thereby insured.

It follows from what we have said that in our opinion if the letter of appellants was not stamped when it was deposited in the postoffice, the terms of the agreement in regard to notice by a mailed letter were not complied with. If this be the case, then the "surplus" of insurance, which Cochran's memorandum was designed to cover, had not been applied for; and the contingency had not arisen which could alone authorize him to bind appellee by a designation in his office. Cotton & Brother's agreement was to "cover surplus lines of insurance" for him—not to insure cotton in advance before he had an application for the insurance. By keeping in view these conclusions the assignments of error are not difficult of determination.

The first assignment of error is in substance that the court erred in its charge to the jury in construing the written con-

tract between Cochran and Cotton & Brother. It is not neces-
sary for us to decide whether the interpretation given in the first
sentence of the instructions be correct or not. It appears from
the subsequent part that the jury were authorized to find for ap-
pellants in either of three events: First, if appellants mailed
the letter to Cochran on the night of December 2, duly stamped;
second, if they notified Cochran of having mailed the letter
and of its contents before the fire; and third, if Cotton & Brother
had authority to issue the certificate after the fire. Certainly
this was all appellants could claim under the evidence adduced
on the trial; and whether the abstract proposition construing
the contract contained in the charge be correct or not, appellants
were not prejudiced by it.

By the second and sixth assignments of error it is complained
that the court erred in its charge in reference to the authority of
Cotton & Brother. If no binding contract of insurance had been
effected upon the cotton up to the time of the fire, it certainly
can not be contended that the court should have charged the
jury, as a matter of law, that they had authority to ratify the
attempted contract and issue the certificate. As we understand
the charge, the court correctly instructed the jury to look to the
evidence in order to determine the scope of the authority of
these agents. If by the several agreements that had been made
and the acts of appellants under them, a valid contract of insu-
rance had been completed before the loss, then it was a matter
of no moment whether the certificate was issued or not; appel-
lants were entitled to recover without it. But if no such con-
tract existed at the time of the fire, Cotton & Brother, merely
as agents to effect insurance, had no authority to issue the cer-
tificate.

From what has already been said, it is not necessary to con-
sider the fourth assignment, which is to the effect that the court
erred in instructing the jury that an unstamped letter deposited
in the postoffice was not sufficient notice to Cochran under his
and appellants' agreement. This assignment is not well taken.
Nor do we think the court erred in charging the jury that notice
to Cochran after the fire commenced was not sufficient to bind
appellee.

It is not a case of two parties making a contract of insurance
upon property already lost, agreeing to date it from a past day,
both being, at the date of the contract, ignorant of the loss.

When the notice was given the fire was in progress, and appellants knew it.

The seventh assignment of error is, "that the court erred in refusing the charges asked by plaintiff." The charges asked are three in number. Such an assignment is not in accordance with the rule, and according to the uniform line of decision in this court, will not be considered.

The refusal of the court to permit appellants to show by witnesses Cotton and Cochran why more of the insurance designated by Cochran on December 2 was allotted to the Traders' Insurance Company, is also assigned as error; but this, if error, did not prejudice appellant's case. The record shows that the case was tried without any reference to that company, and in the charge the liability of appellee is not made to depend, in any respect, upon the fact that that company was a party to the original contract between its agents and Cochran. Appellants, therefore, were not prejudiced by the ruling of the court excluding the testimony.

The ninth assignment is that the court erred in overruling the motion for a new trial. The main grounds of this motion raised the other questions already passed upon, and need not be discussed further.

Because we find no error in the judgment, it is affirmed.

*Affirmed.*

Opinion delivered December 17, 1886.