WESTERN UNION TELEGRAPH CO. v.
FLETCHER. (No. 6014.)

(Court of Civil Appeals of Texas. Austin.
Jan. 29, 1919.)

1. TELEGRAPHS AND TELEPHONES ⬡65(1)—
FAILURE TO DELIVER MESSAGE—PETITION.

Petition of person willing to sell cattle,
against telegraph company, for failure to deliver
to him message stating buyer's willingness to
buy, *held* demurrable as not alleging sufficient
facts to show contract by telegraph company to
transmit and deliver message, which it was
alleged was never delivered, and as not suffi-
ciently alleging facts to show existence of com-
pany's duty to transmit and deliver.

2. SALES ⬡22(4)—OFFER AND ACCEPTANCE—
CONDITIONAL ACCEPTANCE.

Answering telegram expressing willingness
of buyer of cattle to take heifer yearlings offer-
ed him *held* not acceptance of seller's proposal
to sell, not having been unconditional, so that
no binding contract of sale resulted.

3. CONTRACTS ⬡26—OFFER AND ACCEPTANCE
—ACCEPTANCE BY TELEGRAPH.

If contractual offer·be submitted by tele-
graph, sendee may accept proposal by same in-
strumentality, and, if there is an unconditional
acceptance, filing of telegram of acceptance with
telegraph company constitutes binding contract
without reference to delivery.

4. TELEGRAPHS AND TELEPHONES ⬡60—CON-
TRACT BY TELEGRAPH—LIABILITY OF COM-
PANY.

Where filing of response to telegram with
telegraph company made a binding contract,
there could be no recovery against it for failure
to transmit the response.

5. TELEGRAPHS AND TELEPHONES ⬡60 —
FAILURE TO TRANSMIT COUNTER PROPOSI-
TION—RIGHT OF ACTION.

If telegraph company assumed duty to trans-
mit telegram accepting, though not uncondition-
ally, a contractual offer, and negligently failed
to transmit and deliver to party making the of-
fer, the latter could recover any damages proxi-
mately resulting from his failure to receive qual-
ified acceptance or counter proposition, provid-
ing he could show he would have consummated
contract on terms of telegram of acceptance.

Appeal from Lampasas ·County Court; J.
Tom Higgins, Judge.

Suit by E. N. Fletcher against the Western
Union Telegraph Company. From a judg-
ment for plaintiff, defendant appeals. Re-
versed and remanded.

Albert T. Benedict, of New York City, and
McCartney & McGee, of Brownwood, for ap-
pellant.

W. H. Adkins and Word & Walker, all of
Lampasas, for appellee.

BRADY, J. Appellee brought this suit in
the county court of Lampasas county against
appellant, alleging, in substance: That ap-
pellant, a private corporation with an agent
at Lampasas, had prior to and since July
7, 1916, owned and operated a telegraph
line from Lometa, Lampasas county, Tex., to
Carrizo Springs, Dimmit county, Tex., and
for hire transmitted telegrams and messages
for the public generally between said points.
That on said date appellee was the owner of
150 head of yearling heifers of the reason-
able market value of $27 per head; said cat-
tle being located in Lampasas county. That
on or about said date appellee "delivered to
defendant's agent at Lometa, Tex., a tele-
gram addressed to R. R. Tate, Carrizo
Springs, Tex., offering to sell said yearlings
to said Tate at the sum of $30 per head.
That on or about the 9th day of July, 1916,
said R. R. Tate delivered to the defendant's
agent at Carrizo Springs, Tex., a telegram
addressed to this plaintiff at Lometa, Tex.,
in which telegram said Tate advised this
plaintiff that he would take 150 head of said
yearlings at the sum of $30 per head." Ap-
pellee further alleged that by the terms of
the telegrams defendant and its agent were
informed of the facts and circumstances re-
quiring a speedy transmission and delivery
of said telegrams; that defendant was in
possession of the telegrams, and appellee de-
manded their production. Appellee further
alleged that the telegram dated July 9th,
from Tate to·appellee, was never delivered
by defendant, and that appellee did not know
until long thereafter that Tate had delivered
the telegram "to the defendant for delivery
to this plaintiff." It was alleged that by the
use of reasonable and proper diligence appel-
lant could have delivered the telegram to
appellee at Lometa, and that he would have
been able to make the sale of said yearlings
to Tate for $30 per head, and that Tate was
at said time ready, able, and willing to pay
appellee said sum. Appellee alleged damages
in the sum of $450, as the result of the alleg-
ed negligence of appellant in failing to deliv-
er said telegram of July 9th, and prayed
judgment therefor.

Appellant answered by general demurrer,
certain special exceptions, and by general
denial, and the case was tried by the court
without a jury, and judgment rendered for
appellee against appellant for the sum of
$450. The trial court filed findings of fact
and conclusions of law, as follows:

"Findings of Fact.

"First. I find that on July 7, 1916, prior to
and since said time, the defendant, Western
Union Telegraph Company, was a private cor-
poration duly incorporated and doing business
in Lampasas county, Tex., and owned and oper-
ated a telegraph line from the city of Lometa,
Lampasas county, Tex., to Carrizo Springs,
Dimmit county, Tex.

"Second. That on said 7th day of July, 1916,

plaintiff was a resident of Lometa, Lampasas county, Tex., and was the owner of 152 head of straight 'Y' brand heifer yearlings, of the reasonable market value at Lometa, Lampasas county, Tex., of $27 per head at said time; said yearlings being good clean stuff with no dogies among them.

"Third. That the plaintiff was informed that one R. R. Tate, who resided at Carrizo Springs, Tex., wanted to buy said cattle.

"Fourth. That on or about the 7th day of July, 1916, plaintiff delivered to defendant, its agents and employés at Lometa, Lampasas county, Tex., a telegram for transmission addressed to R. R. Tate, Carrizo Springs, Tex., which said defendant transmitted to said R. R. Tate at Carrizo Springs, Tex., wherein plaintiff offered to sell to the said R. R. Tate 150 head of heifer yearlings at the price of $30 per head, and to send man to look at said cattle.

"Fifth. I find that the said R. R. Tate knew the cattle owned by plaintiff, and was acquainted with their kind and character, having seen said cattle a few days prior to the date of said telegram.

"Sixth. I find that said R. R. Tate, on July 9th, delivered to the defendant telegraph company a telegram at Carrizo Springs, Tex., for transmission and delivery to plaintiff at Lometa, Lampasas county, Tex., the following telegram: 'E. N. Fletcher, Lometa, Texas.    7/9/16 40 pd. N. L. Cl.  Will pay thirty dollars for heifer yearlings for straight "Y" brand dogies taken out and then ten per cent. cut.  Cannot handle less than one hundred and fifty.  Will be able to receive them by the fifteenth of this month.  R. R. Tate So. B. M. 5.48p.'

"Seventh. I find that at the time of the delivery of said telegram to the defendant by said R. R. Tate for transmission and delivery to plaintiff, and until and after the 15th of said month, the plaintiff was the owner of 152 head of heifer yearlings, straight 'Y' brand, there being no dogies in said 152 head, all of said 152 head being well bred, clean Hereford yearlings, and that plaintiff would have accepted said sum of $30 per head for 150 head of said cattle and delivered same by the 15th day of said month, if defendant had delivered said telegram to plaintiff within said time.

"Eighth. I find that the said R. R. Tate was ready, able, and willing to comply with the terms of said telegram so delivered by him to defendant for transmission to plaintiff.

"Ninth. I find that defendant failed to deliver said telegram from said R. R. Tate to plaintiff within a reasonable time after same was accepted by defendant for transmission to plaintiff, and never delivered said telegram to plaintiff until long after the time limit in said telegram had expired, and that plaintiff never ascertained that said Tate had sent said telegram to defendant for transmission to plaintiff.

"Tenth. I find that, when plaintiff first learned of the sending of said telegram by Tate, the time limit fixed by the said Tate in said telegram had expired, and it was too late and impossible for plaintiff to comply with the terms of said contract.

"Eleventh. I find that by the use of reasonable and ordinary care and diligence the defendant could have delivered said telegram from said Tate to plaintiff at Lometa, Tex., within the time limit fixed in said telegram for the delivery of said cattle, and that plaintiff could and would have sold and delivered to the said R. R. Tate by the 15th of July, as specified in said telegram, 150 head of heifer yearlings, straight 'Y' brand, no dogies, at $30 per head.

"Twelfth. I further find that the telegram from plaintiff to said Tate was a proposition to sell 150 head of yearlings at $30 per head.

"Thirteenth. I find that the telegram from said R. R. Tate to plaintiff that defendant failed to deliver was an acceptance of said proposition from plaintiff, provided the cattle were delivered by plaintiff to said Tate by the 15th day of July, 1916.

"Fourteenth. I find that by the terms of said telegrams defendant was put upon notice as to the purpose of said telegrams and of facts and circumstances requiring a speedy transmission and delivery of said telegram, and that said sale could not be consummated if said telegram was not delivered within the time specified in said telegram for the delivery of said cattle, and that time was the essence of said contract.

"I conclude as a matter of law that the plaintiff, E. N. Fletcher, is entitled to recover of and from the defendant, the Western Union Telegraph Company, by reason of its failure to deliver said telegram from said R. R. Tate to plaintiff, the sum of $450, being the difference in the market value of said cattle at Lometa, Lampasas county, Tex., at the time said telegram should have been delivered, and the price the plaintiff could and would have sold said cattle to said R. R. Tate had said telegram been delivered to plaintiff within a reasonable time after it was delivered to said defendant for transmission and delivery to plaintiff."

We adopt the findings of fact made by the trial court, except in the particulars and with the qualifications hereinafter indicated.

[1] Appellant by his first assignment of error complains of the action of the trial court in overruling its general demurrer to appellee's petition.  We have carefully examined the allegations of the petition, and have reached the conclusion that the general demurrer should have been sustained, for the reason that the petition does not allege sufficient facts to show a contract by appellant to transmit and deliver the telegram, which it is alleged was never delivered; nor does the petition sufficiently allege facts to show the existence of a duty on the part of appellant to transmit and deliver said message.

It is true that appellee alleged that Mr. Tate delivered the telegram of July 9th to appellant, but it is nowhere alleged that said telegram was accepted by appellant, or its agents, or that it undertook to transmit and deliver the same.  Considering a similar question in Western Union Tel. Co. v. Henry, 87 Tex. 165, 27 S. W. 63, Justice Gaines, speaking for the Supreme Court, said:

"Does the petition anywhere allege a contract between either of the senders and the defendant, by which the latter undertook to transmit the messages, or either of them?  As to the first message only is it alleged that it was delivered to the defendant, and it is not even there alleged that it was delivered and accepted

for transmission. As to the other messages, it is simply averred that they were 'sent' and were 'delivered,' but how they were sent, and by whom delivered, is not alleged."

After stating that the court was not empowered to dispense with the statutory requirement that a plaintiff must state in his petition facts which constitute a cause of action, Justice Gaines, in the above-cited case, held the petition bad upon general demurrer, because no express promise to transmit the messages was alleged in the petition, and because there were no averments of fact from which such a promise can be implied.

In the instant case the sole allegation, which it could be claimed constitutes an averment of a contract or duty on the part of the telegraph company to transmit and deliver the message in question, was the mere averment that Tate delivered the message to defendant and its agent. Under the authority of Western Union Tel. Co. v. Henry, we are compelled to hold that such allegation is insufficient. Therefore we sustain appellant's first assignment of error, and this case must be reversed for the error of the trial court in overruling the general demurrer.

In view of the disposition we have made of this case, and the probability of another trial, we consider it proper to indicate our views upon some of the other questions raised by other assignments in appellant's brief. Appellant complains of the eleventh, twelfth, and thirteenth findings of fact by the trial court, on the grounds that the eleventh finding of fact is upon an issue not in the case, and that the evidence does not support any of these findings. We do not agree with appellant that these findings were upon issues not made by the pleadings or the evidence. However, we seriously question the sufficiency of the evidence to sustain the court's findings that, if the telegram from Tate to appellee had been transmitted and delivered with reasonable diligence within the time limit fixed in said telegram for delivery of the cattle, appellee could and would have sold the cattle to Tate upon the terms stated in said telegram. We have carefully read all the testimony in the statement of facts. Appellee admitted that he had but 152 head of heifer yearlings "Y" brand at the time, and while he stated that he would have sold the cattle to Tate at the price $30 per head, if he had received his telegram, he admitted that, if Tate had exercised his privilege of cutting out 10 per cent. of the total number of the cattle, he could only have delivered 135 to 137 head of yearlings, whereas, Tate's telegram expressly stated that he could not handle less than 150 head. The only other evidence upon this question is the testimony of Mr. Tate. He stated that he was ready, willing, and able to take 150 head of yearlings from appellee, at $30 per head, up to the time stated in his telegram for delivery,

and that he had a buyer for that number of the cattle at $32.50 per head. He stated that he knew the cattle well, and had helped to load them at Carrizo Springs a few days before appellee's telegram was delivered to him. But it will be observed that Mr. Tate did not testify that he would have taken any less than 150 head of the cattle, nor that he would have waived his right to cut out 10 per cent. of the total number. He had reserved the privilege of cutting out 10 per cent. of the cattle, by the terms of his telegram to appellee, although at that time he had all the knowledge that he ever possessed concerning the grade, quality, and number of the cattle. Therefore we say that it is very doubtful whether the testimony sustains the finding that appellee would have sold 150 head of these identical cattle to Tate had his telegram been promptly delivered. However, Mr. Tate's testimony may be susceptible of the meaning that, knowing the cattle as he did, he would have taken 150 head, and not have exercised his privilege of cutting out 10 per cent. or any part of the 150 head. For this reason, we do not feel inclined to set aside the trial court's finding on this point; but, in view of the probability of another trial, we think it proper to indicate our doubt as to the effect of Tate's testimony.

[2] Appellant by certain assignments insists that the trial court erred in its thirteenth finding of fact, that the telegram from Tate to appellee was an acceptance of appellee's proposition, provided the cattle were delivered by July 15, 1916; and that the court erred in rendering judgment for appellee under this finding, because the evidence shows that Tate's telegram was not an acceptance. Appellant follows these propositions with an assignment to the effect that, the court having found that Tate's telegram was an acceptance of appellee's offer, there was no liability upon the part of appellant to appellee, because under such findings there was a binding contract made between appellee and Tate, and appellee's cause of action, if any, was not against appellant, but was against Tate for nonperformance of the contract.

We think appellant is right in its contention that the evidence does not sustain the finding that Tate's telegram was an acceptance of appellee's proposition, and that it did not constitute a binding contract between them. It is elementary that a proposal must be unconditionally accepted and in the very terms of the offer, otherwise a binding contract will not result. If there is any substantial alteration in the terms of the offer by the terms of the acceptance, there is no contract, but the alleged acceptance will be treated as, in legal effect, a counter proposition. These rules are too well established in the law of contracts to need the citation of any authority.

Tested by these standards, it is clear to us that Tate's telegram was not an acceptance of appellee's proposal. We think there can be no doubt that appellee's telegram to Tate was a proposal to sell him 150 head of yearlings at $30 per head, but Tate's telegram did not undertake to unconditionally accept this offer. We will point out the particulars in which we think Tate's telegram was a variance from the proposal:

In the first place, appellee did not specify the brand of cattle offered for sale. Tate's reply specified straight "Y" brand. Tate's telegram further provided: "Dogies taken out and then 10 per cent. cut. Cannot handle less than 150." These were conditions not contained in the proposal. Another material variance was the condition in Tate's reply to the effect that the cattle must be delivered by July 15th, which was also not a part of appellee's offer. For these reasons, we think the trial court's finding that Tate's telegram was an acceptance of appellee's proposition is not sustained by the evidence.

[3-5] While we conclude that the evidence did not support the finding that Tate's reply was an acceptance of appellee's offer, we do not agree with appellant that under this theory of the case appellee would not be entitled to recover damages against appellant, although he might show that he suffered loss proximately caused by the failure of appellant to perform a contractual obligation or duty to transmit and deliver Tate's telegram to appellee.

It seems to be the law in this state that, if an offer be submitted by telegraph, the sendee may accept the proposal by the same instrumentality, and, if there be an unconditional acceptance of the proposition, the filing of the telegram of acceptance with the telegraph company constitutes a binding contract, without reference to the delivery of the same to the sender; and that in such cases there would be no cause of action against the telegraph company for failure to deliver the telegram, or for negligence in its transmission, but that the cause of action, if any, would be against the party accepting the offer and making the contract. See Tel. Co. v. Connell Land Co., 61 Tex. Civ. App. 168, 128 S. W. 1162; Blake v. Ins. Co., 67 Tex. 163, 2 S. W. 368, 60 Am. Rep. 15; Mortgage Co. v. Davis, 96 Tex. 504, 74 S. W. 17, 97 Am. St. Rep. 932; Tel. Co. v. Williams, 137 S. W. 148. However, if the acceptance is not unconditional and complete, but is a substantial variance from the proposal, constituting, in legal effect, a counter proposition, the above rule would have no application. If the telegraph company contracted or assumed the duty of transmitting and delivering the telegram of acceptance, and negligently failed to transmit and deliver the same to the party making the offer, the lat-

ter could recover any damages proximately resulting from the breach of contract or duty by the telegraph company, provided he could show that he would have consummated the sale upon the terms and conditions of the telegram of acceptance, but for the negligence or breach of duty on the part of the telegraph company.

The latter rule was recognized and applied by this court in the case of Western Union Tel. Co. v. Williams, 137 S. W. 148, and the facts of that case are quite analogous to the facts of the instant case.

We indicate these conclusions for the guidance of the trial court in event of another trial of this cause. We do not deem it necessary or important to consider any of the other assignments of error in appellant's brief; but, for the error above pointed out in overruling appellant's general demurrer to appellee's petition, this case is reversed and remanded.

Reversed and remanded.