Harry T. TURNER, Appellant,

v.

Ben DAY, Appellee.

No. 3613.

Court of Civil Appeals of Texas. Waco.

Feb. 19, 1959.

Rehearing Denied March 19, 1959.

Riley, Jones, Boyd & Lovelace, Waco, for appellant.

Cureton & Cureton, Meridian, for appellee.

TIREY, Justice.

This is a suit for damages and plaintiff has appealed from an order sustaining defendant's plea in abatement.

In the judgment we find this recital:

"On the 19th day of August, 1958, came on to be heard the Defendant's Plea in Abatement, and came the Plaintiff in person and by attorney, and testimony being heard, and the Court having heard the argument of counsel, is of the opinion that the matters and things in controversy were previously settled by offer made by plaintiff and acceptance thereof made by defendant and that defendant's plea of abatement should be sustained."

The Court decreed that plaintiff take nothing and adjudged the costs against plaintiff.

The judgment is assailed on one point, it is:

"The trial Court erred in sustaining the appellee's plea in abatement since the facts affirmatively showed that the case had not been settled prior to the filing of this suit."

A statement is necessary.

This cause was tried without the aid of a jury and there was no request for findings of fact and conclusions of law, and none filed. The case was also tried without the aid of a court reporter, and the attorneys filed the following agreed summary of the testimony (see Rule 377, Sec. D). We quote the pertinent parts of this summary:

The defendant Ben Day:

"My name is Ben Day, I am 73 years of age, I live near Kopperl, Texas, on highway No. 174, where I have lived for the past 46 years. On December 24, 1957, before good day light, a collision occurred on highway No. 174 between a car driven by Mrs. Harry T. Turner and a cow which is alleged by Mrs. Turner to have been mine.

"My attention was called to the collision by my son-in-law who was visiting me and who had gotten up early to go deer hunting. I saw the dead animal in the ditch by the road and Mrs. Turner's car was some little distance down the road. It looked as if she had tried to proceed after the accident. I did not notice the extent of the injury to her car but did notice that the front end was mashed in and am sure that it would take more than $50.00 to repair it.

"I took the dead animal back to my house, but never did, then or later state that the cattle were mine. There were several cattle out on the highway near the accident but they were not mine. I did find a number of my cattle out on what we called the Eulogy road which intersects the highway a short distance west of the scene of the accident. They would probably have got-

ten on the highway had I not driven them back through my gate onto my property.

"The next day Mrs. Turner came by my house. I told her then that the animal involved was not mine and I would not pay her anything. I told her I would cooperate with her, though I have not actually tried to find out whose cattle were involved since I am trying to get along with all my neighbors.

"The next day Mrs. Turner called again on the phone and talked with my daughter while my wife and I were gone. On the following day or the day after that we received a letter from Mrs. Turner. I have looked for this letter at home and can't find it. However, it seems to me the letter was dated December 26th or 27th. In it she said that if I would send her a check for $50.00 it would settle the matter, otherwise she would sue. I still did not want to pay her anything but my daughters were there and they insisted that I pay rather than to go to court, in fact, one daughter said that if I didn't, she was. I told her that I had the money and if that was the way she felt, I would just pay it, so either my daughter or my wife wrote the check, and my wife signed it for me and sent it to Mrs. Turner in Garland. At that time and ever since I have had sufficient money on deposit in the Farmers State Bank, Meridian, Texas, in the account upon which the check was given, to cover the check. It was my intention to accept her offer of settlement.

"I have never used an attorney before this matter came up. I did not go to see Mr. Cureton until some three or four months after I sent my check to Mrs. Turner; when I received a letter from plaintiff's attorney stating that he represented the loan company —that is, the Turners' insurance company, Northwestern Mutual Casualty Company, and the Turners, and they wanted some $328.00 more. I had thought the matter was ended, since I hadn't heard from anyone about it since I sent the check."

Cross-Examination:

"I generally run from twenty to one hundred head of cattle on my place, and at that particular time had about 25 or 30 head. My son-in-law and I herded the cattle on the road off of the highway, and took the dead animal that was hit back to my barn.

"I don't know of course the contents of my daughter's phone conversation except by what she told me. However, I read the letter personally as did all the members of my family and in all I guess some 25 persons. In the letter she said that if I would pay her $50.00 she would not sue."

Check introduced in evidence is as follows:

"Meridian, Texas 12-28-1957 No. —

The Farmers State Bank

Pay to the Order of Harry T. Turner   $50.00
Fifty-and no/100 .........................Dollars
For settlement of all claims        Ben Day
   for cattle being on highway      Kopperl, Tex."

The above was marked Defendant's Exhibit 1.

Mrs. Billie Prince:

"I am Ben Day's daughter. At the time of the accident occurred my husband and I lived in South Dakota; we now live in Fort Worth. We were at my father's for Christmas on vacation.

"On December 26, 1957 Mrs. Turner called and asked to leave a message with me. I think she thought I was a young child. She told me to tell Mr. Day that she would take $50.00 in settlement of the damage and would not sue him; but if he didn't pay her she

would have to go to court. The next day or the day after that, we received a letter from her which more or less was a confirmation of the telephone call—it said she would take $50.00 in settlement or she would go to court. I figured that she probably had an insurance policy and was going to try to settle the rest with the insurance company.

Cross-Examination:

"She did not say that she was going to get the rest from an insurance company but I just figured from the amount she demanded that she had a policy with $50.00 deductible. My father had never been sued before, and we finally decided it would be better to pay it and avoid the lawsuit.

"My mother wrote the check and signed my father's name. However after we discussed it I wrote the notation down in the corner about what it was given for. That is my handwriting there in the corner."

Mrs. Harry T. Turner was only asked about the check. She stated that she received it in Garland about January 2 or 3, 1958.

During the argument Mr. Day volunteered:

"That he assumed from Mrs. Turner's actions that she had insurance and was going to try to settle for the balance of her injury with the insurance company, which was hers and the insurance company's business and not his."

On examination by his counsel he stated:

"That he understood and intended his check for $50.00 to be settlement of all of the matters in controversy."

Plaintiff went to trial on his original petition. Pertinent to this discussion he alleged substantially: That on December 24, 1957, he and his wife were in a Chev-rolet car; his wife driving about 6:30 A.M. on highway 174, in Bosque County, proceeding in a westerly direction towards Cranfills Gap, and operating their car at a speed between 40 and 45 miles per hour; that the highway was slightly up-grade and that as they were proceeding they came suddenly upon a herd of cattle in the middle of the road; that his wife used due care to avoid a collision with the cattle, but without success, and that their car collided with a calf that ran directly into the path of the car; that at the point of the accident there was a stock law in force and that this stock law prohibited cattle to roam at large on a public highway and private property, and that the negligence of defendant in allowing this particular calf to be on the highway was the proximate cause of the collision and resulting damages to plaintiff's automobile; that the car was in good repair and that the reasonable cash market value immediately before the accident was $540, and that such value immediately after the accident was $100, and plaintiff sued for the sum of $440. Defendant filed his plea in abatement in which he averred substantially that subsequent to the accident and before the filing of the suit plaintiff wrote to this defendant offering to settle and compromise the matters and things in controversy for the sum of $50; that defendant mailed immediately to the plaintiff his check for the sum of $50 in full settlement of the controversy, which check was drawn against his account on the Farmers State Bank of Meridian, and at the time it was drawn, and since that time such check was good and would have been honored and paid at its face value if it had been presented to such bank; that such check is in the possession of plaintiff; that after the offer was received by the defendant through the mail that there was no withdrawal of such offer by mail or otherwise, and that defendant avers that the matter was in all things settled, and that by reason thereof there was a completed contract of settlement and satisfaction of all the matters in controversy; defendant prayed that plaintiff's

suit be abated. Appellant filed no reply to appellee's plea in abatement.

■ Going back to appellant's Point One, does the record here show conclusively that this claim had not been settled? We think that appellant failed to carry his burden in this behalf. As we understand the summary of the testimony filed, appellee's evidence is to the effect that the calf that appellant's car struck did not belong to the appellee, and that the appellant was so advised, and that appellant, with notice of appellee's claim that he was not the owner of the calf, tendered an offer of settlement to appellee for the sum of $50, whereby the appellant would release the appellee of all liability and would enable the appellee to avoid the defense of a lawsuit. Under the foregoing conditions appellee's testimony is to the effect that he accepted the offer and tendered his check in full settlement, and that the appellant received the check with the notation on it: "For full settlement of all claims for cattle being on highway, Kopperl, Texas." And, although he did not cash the check he retained the possession and control thereof, and did not notify appellee that he would not accept the check in full settlement, but has continued to hold the check and appellant says he is willing to apply and will apply said check upon the payment of such damages as may be awarded in his favor against the appellee. As we understand the summary of facts before us neither appellant nor his wife who was driving the car denied the claims of the appellee as to the full settlement. We think the foregoing undisputed factual situation brings this cause within the rule announced in Root & Fehl v. Murray Tool Co., Com. App., 26 S.W.2d 189, 191, 75 A.L.R. 902. In this case we find this statement:

"It is the settled law of this state that, when an account is made the subject of a bona fide dispute between the parties as to its correctness, and the debtor tenders his check to the creditor upon condition that it be accepted in full payment, the creditor must either refuse to receive the check or accept the same burden by its attached condition. If he accepts the check and cashes the same, he impliedly agrees to the condition, although he may expressly notify the debtor that he is not accepting the same with the condition, but is only applying the same as a partial payment on the account."

Citing a long list of cases. As we view the summary statement it is sufficient to sustain the Court's implied finding to the effect that there was an expressed verbal agreement and understanding between the appellant and appellee that the check for $50 was to be accepted as a full compromise of all the claims that appellant had against the appellee. It follows that we are of the view that the evidence before us is sufficient to sustain appellee's plea in abatement of accord and satisfaction. Moreover, we are bound by the following rule stated in Wilson v. Teague Independent School District, Tex.Civ.App., 251 S.W.2d 263, 268, (W.R.) where we find the following statement:

"The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings."

Citing: Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. See also cases collated under 4 Tex.Dig., Appeal and Error, ■ The only modification of the foregoing rule is found in Re King's Estate, 150 Tex. 662, 244 S.W.2d 660. (We do not think the Court's findings are against the great weight and preponderance of the evidence.)

In Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164, 166, our Supreme Court, in discussing the question as to whether as

a matter of law there was any evidence to sustain the judgment of the district court announced this rule:

"In determining this question, we must presume that the evidence supports not only the expressed findings made by the district court but also any omitted findings which are necessary to support the judgment."

Citing Rule 299, Texas Rules of Civil Procedure, and a long list of authorities. The appellant contends in his brief and in oral argument that if he had had a court reporter transcribe the entire testimony tendered in this cause that the testimony would have shown conclusively that the appellant did not intend to settle his claim against the appellee for the sum of $50. This contention cannot afford any relief to appellant.

■ Our Supreme Court has consistently held that in the absence of a statement of facts it must be presumed that sufficient evidence was introduced to support the findings of the jury and the judgment of the Court. See Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683, pt. 6, at page 685; see also Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549. Our Supreme Court has never departed from the foregoing doctrine and we think the rule here stated also applies to those cases tried without the aid of a jury. See Parker v. El Paso Water Improvement District, 116 Tex. 631, 297 S.W. 737, pt. 12. For collation of authorities see also the opinion of this Court in First National Life Insurance Company v. Herring, Tex.Civ.App., 318 S.W.2d 119, cases collated on page 122.

■■ Moreover, under the record here made it is shown that there was some negotiation between the parties, and that subsequent thereto appellant made an offer of settlement through the mails, which offer was accepted by the appellee, by check duly deposited in the mail and was received by the appellant and said offer was never withdrawn. In Blake v. Hamburg-Bremen Fire Ins. Co., 67 Tex. 160, 2 S.W. 368, 370, our Supreme Court made this statement of the Rule:

"A contract may be consummated by letters deposited in the post-office; and when an offer is made contemplating an acceptance in this manner, and a letter accepting it is properly mailed, the agreement is complete." Citing cases. " * * * the cases are numerous, both in English and American courts, which hold, if the offer contemplates an acceptance through the post-office, the contract is complete as soon as the letter is mailed accepting it."

Our Supreme Court has not seen fit to change the rule here stated. See also Texas Jurisprudence, Vol. 10A, Contracts, Section 26, and authorities there cited; also Sections 27 and 28. See Scottish-American Mortgage Company v. Davis, 96 Tex. 504, at page 508, 74 S.W. 17, 18. Also 9 Texas Digest, Contract, ⬡16, 17, 18 and 19. Under the record here made it is our view that the trial court was entitled to hold impliedly that the acceptance of the check with the knowledge of the express recitals on the check is sufficient to sustain the judgment of the trial court. If appellee's acceptance was not in full accord with the offer made by the appellant, it was appellant's duty to notify appellee and return his check and advise appellee that the matter could not be settled on the basis of the acceptance made by appellee to appellant; this he wholly failed to do. We have previously stated that appellant did not deny the plea in bar set up by appellee, nor did appellant tender the $50 check back to appellee, nor did appellant tender evidence contradicting appellee's testimony of the proposal of settlement contained in his letter and appellee's acceptance thereof. "Appellant is attempting to have his cake and eat it too." We see no error in the trial court's judgment and it is affirmed. See Security Storage & Van Company, Inc. v. General Insurance Company of America, Tex.Civ. App., 310 S.W.2d 729, (N.W.H.).