## CIRCUIT COURT OF THE CITY OF NORFOLK

Trinity Homes, L.L.C.,
and Seabring Development, L.L.C.

    v.

Ching Seng Fang
and Carol S. Fang

November 13, 2003

Case No. (Chancery) CH02-2297

BY JUDGE MARC JACOBSON

Agreed-upon facts in regard to the above-captioned cause are basically set forth in the "Agreed Stipulations for Trial of Trinity Homes, L.L.C., and Seabring Development, L.L.C. v. Ching Seng Fang and Carol S. Fang" (Stipulations), Complainant Exhibit 1. The significant facts relative to the primary issue in this cause are addressed in the Stipulations. The primary issue in this cause is the status and/or effect of an alleged facsimile transmission by Damon Stewart, the agent for Trinity Homes, L.L.C., and Seabring Development, L.L.C., Complainants, to T. H. Nicholson, III, the agent for Ching Seng Fang and Carol S. Fang, Defendants, of the Agreement for Purchase and Sale of Real Estate (Agreement) dated June 17, 2002, marked as Complainant Exhibit 4, which said Exhibit contains the initials "J.F. and D.S."

Stewart alleges that he placed the Agreement in his facsimile machine, dialed the number for Nicholson, pushed the button to start the facsimile, and then went on an errand. The facsimile machine utilized by Stewart was not a modern version and did not provide any verification that a facsimile was being transmitted and/or that such facsimile was received. There are no phone records relative to the alleged transmission of the facsimile transmission by Stewart. Shortly after the time Stewart alleged he forwarded the facsimile to Nicholson, he received a phone call from Nicholson indicating that

Defendants did not wish to sell the property nor enter into a contract with Complainants for that purpose.

Initially, it is necessary to consider whether facsimile (fax) transmissions are similar to or should be treated the same as the Mailbox Rule in regard to the acceptance of a contract.

The Mailbox Rule was enunciated in *Adams v. Linsdell*, 1 B. & Ald. 681, 106 Eng. Rep. 250 (K.B. 1818). The Mailbox Rule states that, once an offeree has dispatched his acceptance, it is too late for the offeror to revoke the offer. The Mailbox Rule has been accepted in most American jurisdictions and by the Restatement of Contracts. *See* Restatement (Second) of Contracts § 63 (1981); *see also Tayloe v. Merchants' Fire Ins. Co.*, 50 U.S. 390, 400–02 (1850); Michie's Jur., *Contracts*, § 20 (2003). The Restatement addresses the issue of the application of the Mailbox Rule to electronic communication in § 64, which states: "Acceptance given by telephone or other medium of substantially instantaneous two-way communication is governed by the principles applicable to acceptances where the parties are in the presence of each other." *Id.* § 64. This is, therefore, a two-prong test: (1) the communication must be "substantially instantaneous"; and (2) the communication must be two-way. "The rationale of the Restatement's position is that when parties are conversing using 'substantially instantaneous two-way communication,' they are, in essence, in each other's presence." Shawn E. Tuma and Christopher R. Ward, "Contracting Over the Internet in Texas," 52 *Baylor L. Rev.* 381, 393 (2000).

To be substantially instantaneous, the transmission must occur within a few seconds, or, at most, within a minute or two. *See* Paul Fasciano, Note, "Internet Electronic Mail: A Last Bastion for the Mailbox Rule," 25 *Hofstra L. Rev.* 971, 983, 983, n. 47 (1997). For a communication to be two-way, one party must be able to "determine readily whether the other party is aware of the first party's communications, through immediate verbal response or, when the communication is face-to-face, through nonverbal cues." Michael S. Baum and Henry H. Perritt, Jr., *Electronic Contracting, Publishing and EDI Law* 321 (1991). Further, if a communication is not two-way, "the offeror will not know exactly when the offeree accepts and may attempt to revoke the offer after the offeree has already sent his instantaneous acceptance to the offeror[]. .... In such a situation, the Mailbox Rule should continue to apply and the contract should be considered accepted upon dispatch of the offeree's acceptance." Tuma and Ward, *supra*, at 393.

The Supreme Court of Oklahoma considered this issue in *Osprey, L.L.C. v. Kelly-Moore Paint Co.*, 984 P.2d 194 (Ok. 1999). In *Osprey*, the plaintiff leased commercial property to the defendant. The lease required that the

defendant provide notice of its intent to renew the lease at least six months prior to the expiration of the lease and notice was to be given in writing and delivered personally or through registered first class mail. The defendant attempted to extend the lease by faxing a renewal letter on the last day of the notification period. The plaintiff denied receiving the fax, despite a fax record and telephone record confirming the transmission. Applying the Mailbox Rule, the court held that the faxed notice of the lease renewal was sufficient to timely exercise the lease renewal option because the notice was in writing and the delivery of the notice by fax transmission served the same purpose of the authorized methods of delivery. The court stated specifically: "the fax log and telephone records show that the notice was property transmitted to Osprey. Transmitting the fax *was like mailing an acceptance under the Mailbox Rule*, where an offer is accepted when it is deposited in the mail." *Id.* at 200 (emphasis added); *cf.* Tuma and Ward, *supra*, at 393, n. 58 (citing *Western Union Tel. Co. v. Fletcher*, 208 S.W. 748, 751 (Tex. Civ. App. 1919)) ("The telegraph is considered an instantaneous form of communication but is only a one-way form to which the Mailbox Rule does apply.").

This Court concludes that the Mailbox Rule is applicable in the instant cause and thus the issue is one of fact, whether or not the facsimile transmission of Plaintiff's Exhibit 4 was actually forwarded or transmitted by Stewart to Nicholson.

As previously indicated, Stewart's fax machine was apparently one of early vintage and provided no verification of the transmission of Complainant Exhibit 4 to Nicholson. Unlike the *Osprey* case, there was no fax log and/or telephone records to show that the fax was properly transmitted to Nicholson. Stewart cannot say with certainty if the fax actually went through other than to say that he placed the fax in the fax machine, turned it on, and then left before viewing and/or verifying its transmission. Further, Stewart did not recall looking at the fax machine by or through which the Complainant Exhibit 4 allegedly was transmitted, when he returned later in the afternoon from his errand.

The burden is on the Complainants to prove by preponderance of the evidence that the fax transmission of Complainant's Exhibit 4 was actually made and accomplished. The Court in considering the totality of the evidence and the totality of the circumstances, finds and concludes that the burden has not been met nor satisfied and finds for the Defendants.